[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 437 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 438 
The only evidence tending to show that either Myers or Thorpe was a "trustee" was the addition of that word to their names, respectively, in designating them as the respective grantees in the conveyances of March 17 and December 22, 1877. As there was no declaration of trust and no deed to either, "as trustee," the addition to the name of the party of the second part, in the absence of other evidence, might be regarded as merelydescriptio personæ (Towar v. Hale, 46 Barb. 34; People v. Boardof Stock Brokers, 49 Hun, 349; affirmed 112 N.Y. 670.) But if either was a trustee, the conveyance to him "and to his successors and assigns forever," was absolute, with no limitation upon his power to convey and no disclosure of the nature or object of the trust. While he might be required to account for the proceeds in a proper proceeding and upon adequate proof, his grantees took a good title, which neither party to this action can question, as both claim under it. Mr. Traphagen, therefore, took the entire estate and during his ownership he granted a certain right in the land under consideration to the Greenwood Lake Ice Company. The nature of that right is the main question to be determined upon this appeal. The instrument by which the right was created was under the hand and seal of Mr. Traphagen and, after reciting his ownership of the strip of land in question, it proceeded as follows: "and whereas the Greenwood Lake Ice Company desire to use said *Page 439 
property as a way of ingress, egress and regress for themselves, their agents, servants and laborers over and upon which they may pass and repass railroad cars containing ice and materials for use in said ice business; now, therefore, in consideration of one dollar to me in hand paid, I do hereby grant to the said ice company and to their assigns and successors in said ice business the right to use said property for the purpose of a way of ingress, egress and regress over and upon which they may pass and repass railroad cars containing ice and materials, said supplies for use in said ice business, together with themselves, their employes and servants, but it is expressly understood that this license to use said railroad is not an exclusive right to the said company. And it is further agreed that the right hereby conveyed is not to be assigned by the said company except to the successors in and assigns of said ice business and only for the purpose of said business."
It is contended by the plaintiff that this was a license, revocable at the will of the grantor, or his assigns, and by the defendant, that it was an easement, irrevocable without the consent of both parties or their successors and that it ran with the adjoining land of the grantee, upon which its ice business was conducted, and for the benefit of which the grant was made. While the instrument creating the right is termed in the body thereof, a "license to use said railroad," this is not conclusive for the court must look at the nature of the right rather than to the name that the parties gave it, in order to learn its true character.
An easement is a right without profit, created by grant or prescription, which the owner of one estate may exercise in or over the estate of another for the benefit of the former. (Washburn Ease. 2; Goddard Ease. 2; 3 Kent's Com. 452; Nellis
v. Munson, 108 N.Y. 453; Pierce v. Keator, 70 id. 419, 421;Hills v. Miller, 3 Paige, 254, 257; Ritger v. Parker 8 Cush. 147; Morrison v. Marquardt, 24 Iowa 35; Big MountainImp. Co.'s Appeal, 54 Penn. St. 361; Hewlins v. Shippam, 5 Barn. C. 221; Rowbotham v. Wilson, 8 Ellis B 123.) *Page 440 
A license is a personal, revocable and non-assignable privilege, conferred either by writing or parol, to do one or more acts upon land without possessing any interest therein. (Wiseman v. Lucksinger, 84 N.Y. 31; Mendenhall v. Klinck,
51 id. 246; Pierrepont v. Barnard, 6 id. 279, 286; Jackson
v. Babcock, 4 Johns. 418; Mumford v. Whitney, 15 Wend. 380;Cook v. Stearns, 11 Mass. 533; Prince v. Case,10 Conn. 375; Washburn Ease. 6, 7; Goddard Ease. 3; 13 Am. Eng. Encyc. 539.)
Although originally revocable at the will of the licensor, it may become irrevocable through the expenditure of money by the licensee. (Wiseman v. Lucksinger, 84 N.Y. 31, 41; Dempsey
v. Kipp, 61 id. 462; Pierrepont v. Barnard, 6 id. 279;Risien v. Brown, 10 S.W. Rep. 661; Rogers v. Cox,96 Ind. 157; Russell v. Hubbard, 59 Ill. 335; Morse v. Copeland,
2 Gray, 302; Drake v. Wells, 11 Allen, 141.)
The right in question was created by deed, and is made assignable, because it runs to the "Ice Company and to their assigns and successors," with a limitation upon the power of assignment, restricting it "to the successors in and assigns of said ice business." It was without profit, as nothing was to be taken from the land of the grantor. It was not personal, because succession in title was provided for. Its nature indicates that the parties intended it to be a permanent interest in the land of the grantor, for it was a right of way over a railroad for the purpose of enabling a corporation to carry on a business requiring transportation upon an extensive scale. The business was of such a character that a revocable right might result in irreparable injury to the grantee. The express mention of successors and assigns of the business shows that the parties had in contemplation something more than a temporary expedient, or a merely revocable user. Moreover, the right of way was the only means of communication by land with the railroad upon which the ice company depended for the transportation of its ice to market, and of supplies to its ice house. The track was laid upon the strip of land leading to the railroad, the right to use it granted and the ice house built, all at *Page 441 
about the same time, and apparently for the same purpose, as there was no other use for the track. While it is true that no dominant estate is expressly named in the grant, yet one in fact existed and was named by implication. The grant was to an ice company, for use in its ice business, of the right to use a railroad track for the purpose of ingress and egress. Ingress to what and egress from what? Obviously, the adjoining land on which the ice company had constructed an ice house, and was conducting its ice business at the date of the grant, and to which it acquired title only three days after the original conveyance of the strip of land in question. All of the deeds were on record, and the creator of the right under consideration expressly mentions the ice business five times in the instrument creating it, thus showing that he knew of its existence, and contracted with reference to it as it was then conducted. The sole object of the grant was to benefit the ice business by giving it a right of way from its ice house to the railroad, and by necessary implication from the language used, under the circumstances surrounding the grantor when he used it, the term "ice business" was intended to designate the land where that business was carried on, as the land to be benefited by the grant. That land, therefore, was designed to be, and is indirectly referred to as, the dominant estate, or that to which the right belongs, while the servient estate, or that upon which the burden rests, is directly mentioned.
We think that the grant from Mr. Traphagen to the ice company, when construed with reference to what the parties had in contemplation, satisfies every element in the definition of an easement, and conflicts with nearly every element in the definition of a license.
After examining all of the exceptions to which our attention has been called, we find nothing that should reverse the judgment, which should therefore, be affirmed, with costs.
All concur.
Judgment affirmed. *Page 442