(12 Misc. Rep. 299.)

### BAGG et al. v. ROBINSON et al.

(Superior Court of Buffalo, Special Term. April, 1895.)

1. INJUNCTION—AFFIDAVIT IN AID OF COMPLAINT.
    Where an injunction is based on the complaint it must be supported by the allegations therein, and such allegations cannot be aided by affidavits, but plaintiff may read affidavits to sustain the allegations of the complaint.
2. SAME—PRELIMINARY INJUNCTION—MOVING PAPERS.
    A sufficient showing is made for a preliminary injunction against interfering with plaintiff's rights under a lease where the moving papers state that defendants leased to plaintiff a certain portion of a theater building, with the exclusive privilege of selling liquors in whatever portion of the building defendants "may permit the sale thereof"; that at the time of the execution of the lease the theater was in process of reconstruction, and the places where the liquor could be sold could not then be determined; that defendants stated to plaintiff that he was to have the privilege of selling liquor in every portion of the building; that thereupon plaintiff entered into possession of the leased portion of the premises, and expended large sums of money in fitting it for such purpose, and thereafter did so sell liquors, until excluded by defendants from the floor of the theater during performances; and the question whether defendants, by the use of the words "permit the sale," intended to give plaintiff merely a license to sell liquor on the floor of the theater during performances will be reserved until the trial.

Action by Charles M. Bagg and others against Marvin S. Robinson and others. Plaintiffs move to continue a preliminary injunction. Denied.

Tracy C. Becker and Eugene L. Falk, for plaintiffs.
William L. Marcy, for defendants.

HATCH, J. The preliminary injunction obtained herein was based upon the complaint and accompanying affidavits, and have been supplemented by other affidavits read in opposition to the moving papers. The complaint, in substance, alleges: That plaintiffs are copartners doing business under the firm name of Bagg & Wegefarth. That the defendant Robinson, about the 12th day of March, 1894, leased the building known as the "Court Street Theater," and entered into possession thereof. That the defendant the Court Street Theater Company is a domestic corporation doing business at the city of Buffalo. That said Robinson duly assigned said lease to said corporation, subject to plaintiffs' rights. That on March 12, 1894, Robinson entered into a written lease with the plaintiffs, whereby he leased to plaintiffs the basement and space under the sidewalk of said Court Street Theater building for the purpose of selling

wines, beer, liquors, and cigars for the term of five years, beginning on the 1st day of May, 1894, and to end on the 1st day of May, 1899.      That, among other things, said lease provided:

"It is hereby expressly understood and agreed that the said parties of the second part [plaintiffs] are to have the exclusive privilege for the sale of beer, wine, liquors, and cigars in the Court Street Theater building, in whatever portion of the premises that said party of the first part may permit the sale thereof, being responsible for the payment of all excise duties and license therefor."

At the time of the execution of said lease said theater was in process of reconstruction, and the portions, spaces, and places where wines, beer, liquors, and cigars should be sold in the building were not determined upon, and could not be until the same was completed. Upon the completion of the improvements, Robinson stated to plaintiffs that they were to have the privilege, under the lease, of selling liquors in every portion of said building.      That plaintiffs thereupon entered into possession of said premises, rights, and privileges, and sold wines, beer, liquors, and cigars in every part of the house.      That said Robinson was interested in the gross receipts from the sale of such liquors, and has at all times received his share of the same, and continues to claim and receive them.      That plaintiffs obtained the license for the sale of liquors and cigars upon said premises, together with a concert hall license required by the ordinances of the city of Buffalo, which authorized their sale in all parts of the house. That during all the time said Robinson has been, and now is, the manager of the said defendant company.      That since on or about November 1, 1894, defendants have wrongfully and unlawfully interfered with plaintiffs' rights under their lease, and since February 4, 1895, they have unlawfully and wrongfully barred the entrance from the premises demised and leased into the first floor of said theater, and have refused to allow the plaintiffs free access to and egress from said theater, and all portions thereof, for the purpose of selling wines, beer, liquors, and cigars, and offering the same for sale.      That said Robinson refuses to open the said entrance, and refuses plaintiffs, their agents and servants, the privilege and rights of possession in the said lease, and free access to and egress from the main floor of the theater, notwithstanding repeated requests and demands therefor, and has and still declares that defendants will continue to refuse to allow the entrance to be opened and unobstructed; and that by reason of said unlawful and wrongful acts plaintiffs' traffic has been entirely cut off through the said entrance upon the main floor and other portions of said theater.      That, if defendants are not restrained, plaintiffs will suffer irreparable injury, for which they have no adequate remedy at law.      Demands judgment for damages, and for a perpetual injunction restraining defendants from interference with plaintiffs' rights in the premises.      The lease is attached to the complaint, and is made a part thereof.      By it the rent reserved is 15 per cent. of the gross receipts of the business done.

There is much conflict respecting many matters contained in the affidavits submitted, and upon much there is no dispute whatever, and the motion may be disposed of, for the most part, on undisputed

facts. It is conceded that when plaintiffs obtained the lease the theater building was in process of reconstruction, and both from the plans of the architect and the alterations made it was evidently intended that said theater should be run as a vaudeville theater, and that liquors and cigars should be sold during each entertainment, which should be procured from the bar in the basement. To this end stairways were constructed leading from the basement to the principal floor of the house, and what was called a "rush bar" placed for the speedy accommodation of many patrons at a time, and the chairs and seats were so arranged that waiters could have access between them, to supply the wants of patrons during the entertainments, and tables and chairs were placed in the boxes and passages of the building to accommodate those who occupied the same or might wish to sit thereat. An electric enunciator was in the bar, and wires ran from the same to all parts of the house, by which waiters could be called at the desire and convenience of the patrons. In addition to this, plaintiffs, after some dispute with defendants as to who should pay therefor, procured and paid $250 for a concert hall license, the same having been rendered necessary by the sale of liquors at the entertainments given, as required by the ordinances of the city; and subsequently there was constructed a roof garden upon the portico, extending from the front of the building to the curb line over the sidewalk, for the use of patrons, with a stairway running direct therefrom to the basement for the convenient service of liquors and cigars as required. Plaintiffs' part of this expense was $350, which they paid. The lateness of the season when it was finished prevented use. When the theater opened for business, plaintiffs were permitted to sell liquors and cigars in all parts of the house, except the gallery, and in the latter were later permitted to sell cigars. Defendants, in a letter under date of October 24, 1894, stated that plaintiffs had a contract for the sale of wines, beer, liquors, and cigars on the company's premises, and proposed, as a temporary expedient, to raise the consideration therefor from 15 to 20 per cent. It does not appear that this was acted upon. Some modification of the original permit to sell appears to have been made, and prices for admission to different parts of the house were changed in consequence. This was evidently an experiment, and it occasioned differences. Difficulties rapidly sprang up, leading to the assertion of claimed legal rights, and the exclusion of plaintiffs from the theater building, substantially as alleged in the complaint. Plaintiffs have expended in fitting up the basement, in addition to the expense before noted, about the sum of $5,000. Before stating the respective positions of the parties, it is proper to settle a preliminary question. Claim is made that, as the injunction is based upon the complaint, it must be supported by the allegations therein, and cannot be helped out by allegations in the affidavits. This undoubtedly is the rule (Stull v. Westfall, 25 Hun, 1), and the plaintiff must show by his complaint that he is entitled to final relief for which the action is brought. McHenry v. Jewett, 90 N. Y. 58. But plaintiff is not precluded from furnishing by affidavit evidence to support the allegations of his complaint. The complaint alleges that

the plaintiffs were to have the exclusive right to sell liquors and cigars in the theater building; that they were granted such right by defendants, and did business thereunder. How they exercised this right, and what was done by defendants to facilitate its exercise, becomes evidence in order to establish it, and also that the parties understood that such rights existed, and intended they should be exercised. Consequently, statements showing the construction of the "rush bar" and stairway leading therefrom, and of the summer garden and its appurtenances, are properly set forth in the affidavits, and tend to support the allegations of the complaint. The main question, however, turns upon the construction to be placed upon the terms of the lease. As to this, plaintiffs claims that they not only leased the space under the sidewalk, but that they acquired an exclusive right to vend liquors and cigars in the theater building; that, as the reconstruction was not complete when they took the lease, the parts of the building where they should sell were not designated until completion, when the same was done by defendants, and this clause was then executed; that thereby they obtained an easement therein irrevocable in character during the life of the lease. The defendants' answer is that the sale of liquors and cigars in the building was an experiment upon their part, which might prove successful or ruinous, and, as they had expended a very large sum in remodeling the theater, they reserved the right to determine this question after practical trial, and to that end granted nothing more than a license revocable at will; that the word "permit" should be so construed as to accomplish this end; that, having tried the experiment, and found it ruinous to their business, they have simply exercised the right which they have reserved.

A license may generally be said to be an authority to do a particular act or series of acts upon the premises of another without having any absolute estate therein, is not assignable, and, before being acted upon, may be revoked at pleasure. The act authorized may not, in many instances, be interrupted by revocation during process of performance, but usually it is revocable at will. Mumford v. Whitney, 15 Wend. 381; Fargis v. Walton, 107 N. Y. 398, 14 N. E. 303. While an easement gives an estate or interest in the land for a specified period, is assignable and irrevocable, and gives the party right of entrance thereunder at all times. Pierrepont v. Barnard, 6 N. Y. 279; Wiseman v. Lucksinger, 84 N. Y. 31. There has been much difference of opinion expressed in the early cases upon the application of the rule to particular facts having regard to whether the claimed right rested upon a license or an estate. But it seems to be now pretty firmly established that mere words will not govern, but the court will look at the nature of the right, rather than the name by which it is called. And while, in the present case, the language used in the lease granting the right to sell, in a strict sense, are words of license, yet the court is not bound by the technical meaning of the words, and will look at the end sought to be accomplished by the instrument, in the light of surrounding circumstances, force being given to practical construction of the instrument by acts of the parties, where such construction does not do violence

to its terms. Greenwood Lake & P. J. R. Co. v. New York & G. L. R. Co., 134 N. Y. 435, 31 N. E. 874; Hathaway v. Power, 6 Hill, 456; Stone v. Clark, 1 Metc. (Mass.) 378; Lanman v. Crooker, 97 Ind. 163. The rule is also recognized in Wiseman v. Lucksinger, 84 N. Y. 41, that where there is an express agreement or conduct, either actively or by acquiescence, which has led the party to make valuable improvements or erect permanent structures, or do other things which would make the assertion of the legal title operate as a fraud upon the equitable right, then an easement will be inferred. And this is true even though the original right was revocable as a license, if the licensee had expended money on the strength of it. Greenwood Lake & P. J. R. Co. v. New York & G. L. R. Co., 134 N. Y. 440, 31 N. E. 874. It appears here that the reconstruction of the theater was upon a general plan to make the bar accessible to the patrons of the house, and also to provide for service in the building when the patrons chose to order refreshments served there. To this end all the structures erected were permanent in character, and tend to indicate a design that the bar and theater should be run in conjunction. It is quite evident that the value of the bar depended very largely upon its continued operation in connection with the theater. Indeed, this is the element, practically, upon which value of the lease depended; at least it may be so found upon the evidence by the trial court. This was the condition contemplated when the lease was drawn, and it is not questioned, or at least could not be with any force, that both parties intended that liquors from the bar would be permitted to be sold in some part of the house; and this intention was carried out when the theater opened. Permission was then given to sell in all parts of the house, except it be the gallery. Upon the faith of this right, plaintiffs procured the concert hall license, and made the further expenditure for the roof garden; and I think it must be assumed they incurred the expenditure in fitting up the bar, in part at least, upon the right providing for sale in the building. If defendants had refused, without assigning any reason, at the opening of the theater, to permit plaintiffs to enter the building and sell, as they would have had the right if defendants' contention be upheld, there would have been presented the condition that, although the instrument contemplated that the defendants would permit them in some place, upon the faith of which they had made valuable improvements, and upon which depended very largely the value of the lease, yet that they were helpless, and at the mercy of defendants in the exercise of the contemplated right. A construction which works such results ought not to be placed upon the contract, unless it be a necessary construction. Russell v. Allerton, 108 N. Y. 288, 15 N. E. 391. It is claimed that this rule does not apply, for the reason that it was entirely competent for the parties to so contract, and that contracts for work to be done or acts performed to the satisfaction of parties have been upheld; citing Daveny v. Shattuck, 9 Daly, 66, and many other like cases. This rule only survives in those cases where personal taste, preference, or convenience, etc., is the object of the contract. Here the object is different, and, if defendant has bound himself, so that he ought to permit,

then the contract will compel him to do so, or, having acted, will continue the rights secured. Boiler Co. v. Garden, 101 N. Y. 387, 4 N. E. 749, points out the distinction. The permit here, however, was granted, and plaintiffs incurred expense and made expenditures upon the faith that it would be continued, and, if we assume that the right first obtained was revocable, yet, having entered upon its performance, and made expenditures in contemplation of its permanency, brings the case within the rule laid down in the Wiseman and Greenwood R. Cases, already cited. It is not necessary now to hold that the result here suggested is the law of this case. It is sufficient to say that upon the complaint and affidavits a prima facie case upon these questions is made out, and upon a trial, when all the facts are developed, a court may be able to find that the parties intended, and in fact contracted for, an easement instead of a license, or the reverse. Upon such trial, all of the facts tending to show that the sale of liquors was an experiment, that when tried it was found ruinous, and that such condition was contemplated when the contract was made, will be considered, and may be found of sufficient cogency to support the construction contended for. That all the facts surrounding the transaction, and the acts of the parties in connection therewith, can then be considered, is abundantly established in Woolsey v. Funke, 121 N. Y. 87, 24 N. E. 191; Bank v. Kaufman, 93 N. Y. 281; Springsteen v. Samson, 32 N. Y. 703. The plaintiffs being in possession at the commencement of this action, and having for some time been prosecuting their business under the lease, no injustice is done in continuing them therein, and allowing the parties to have a trial upon the merits of the respective claims, instead of allowing defendants to determine the rights of the parties by excluding plaintiffs from the building. The facts present a case for equitable cognizance and the granting of a preliminary injunction. Atlantic & P. Tel. Co. v. Baltimore & O. R. Co., 46 N. Y. Super. Ct. 415; Hotel Co. v. Brennan (Sup.) 19 N. Y. Supp. 276. It is quite clear that damages could not be proved by plaintiffs with precision, and while, doubtless, some basis could be laid for their measurement, it would contain a large element of uncertainty, and cannot be adequately proved. This authorizes the interference of equity, preventing the injury. Christie v. Shankey, 12 N. Y. St. Rep. 657. The parties to this action are now in the situation that they were in when the action was commenced, and it is concluded to leave them exercising such rights, and allow the injunction, as previously modified, to stand. The motion is denied, with $10 costs.