Summers, J.
Plaintiff in error contends that the right given by the contract to thé railway company to construct a siding on his land was merely a license *281 revocable at any time or when it ceased to be useful to tbe owner of tbe land.
Tbe railway company contends that the intention of the parties to the contract was, of Rodefer’s predecessor in title, to secure facilities for sending and receiving freight at its factory, and of the railway company to carry the freight; that the siding still may be used to effect that intention and that so long as it may be so used the right to maintain it subsists; that such a right may be created by contract and that if the right is merely a license then it has been executed and is irrevocable.
In Wolfe v. Frost, 4 Sanford’s Chancery, 72, the assistant vice chancellor defines an easement and a license as follows: “An easement is a privilege, without profit, which the owner of one neighboring tenement has of another, in respect of their several tenements, by prescription or by grant; by which the servient owner is obliged to suffer or not to do something on his own land, for the advantage of the. dominant owner. A license is an authority to do a particular act or series of acts upon another’s land, without possessing any estate therein. A license, when executed, will prevent the owner of the land from maintaining case or trespass for the acts done under it; but it is revocable at pleasure, and will not be a defense to any act done after it is revoked.” In The Greemvood Lake & P. J. Railroad Co. v. The N. Y. & G. L. Railroad Co., 134 N. Y., 435, 439, Vann, J., defines them as follows: “An easement is a right without profit, created by grant or prescription, which the owner of one estate may exercise in or over the estate of another for the benefit of the former. A license is a personal, revocable *282 and non-assignable- privilege, conferred either by writing or parol, to do one or more acts upon land without possessing any interest therein.” Similar definitions may be found in the text-books.
That a right such as is claimed by the railway company to maintain and use in perpetuity a siding for its benefit on the land of the defendant is an easement and not a license is, we think, apparent from a study of the cases, and that a failure to discriminate between them has occasioned much of the confusion that exists upon the question of the revocability of a license. The right indefinitely to maintain and use its track upon the land of the defendant would be in effect an appropriation of it to plaintiff’s use. It would be permanent in its nature and an interest in the land. The Junction Railroad Co. v. Ruggles, 7 Ohio St., 1.
In Cook v. Stearns, 11 Mass., 533, 538, a right to enter on the land of another to’ repair a dam was claimed under a license given by a former owner to build the dam. Chief Justice Parker, speaking of what is technically a license, and of licenses which in their nature amount to the creating of an easement, says: “The distinction is obvious. Licenses to do a particular act do not in any degree trench upon the policy of the law, which requires that bargains respecting the title or interest in real estate shall be by deed or in writing. They amount to nothing more than an excuse for the act, which would otherwise be a trespass. But a permanent right to hold another’s land for a particular purpose, and to enter upon it at all times without his consent, is an important interest, which ought not to pass without writing, and is the very object provided *283 for by our statute. If tbe defendant had a license from tbe former owners of tbe plaintiff’s close, to make tbe bank, dam and canal in tbeir land, tbis extended only to tbe act done, so as to save him from tbeir action of trespass for that particular act; but it did not carry with it an authority, at any future time, to enter upon tbe land. As to so much of tbe license as was not executed, it was countermandable; and transferring tbe land to another, or even leasing it, without any reservation, would of itself, be a countermand of tbe license. For although, when one is permitted to do certain things upon tbe. land of another, an implied authority is given to enter upon tbe land to do the thing, and to repair it, if it is of a permanent nature; yet tbe first permission or license must be by grant, in order to draw after it tbis consequence.”
Permission to cross another’s land or to enter upon it, and to cut a tree, or to do some other act, is very different in its consequences from those arising from tbe execution of a permission to appropriate part of the land, or to erect upon it a permanent fixture. And to call permission to do tbe latter a license, and then to say that when executed it is irrevocable because a license executed is irrevocable, is not only to overlook tbe distinction between an easement and a license but also in a measure to defeat tbe object of tbe statute of frauds and of our laws respecting tbe conveyance of land.
A license may be revoked at any time. What is meant by the statement that a license executed is irrevocable is not that tbe license may not be revoked as to future acts, but that tbe licensor may not recover against tbe licensee for tbe acts already *284 done. It is contended that the rule is otherwise in this state, and Wilson v. Chalfant, 15 Ohio, 248; Hornback v. Cincinnati & Zanesville Railroad Co., 20 Ohio St., 81; and Meek v. Breckenridge, 29 Ohio St., 642, are cited.
The earlier cases were decided when land was cheap, water power a necessity, and the policy of the state to encourage manufacturing. The rule contended for does not seem to have been applied in the later case of Wilkins v. Irvine, 33 Ohio St., 138.
In Jones on Easements, sec. 69, the author says: “Although there are numerous decisions which hold that in equity a permanent license becomes irrevocable after the licensee has expended money on the faith of it, these decisions seem opposed to sound law and to the weight of authority, both in America and in England.” In Crosdale v. Lanigan, 129 N. Y., 604, 610, Andrews, J., says: “There has been much contrarity of decision in the courts of different states and jurisdictions. But the courts of this state have upheld with great steadiness the general rule that a parol license to do an act on the land of the licensor, while it justifies anything done by the licensee before revocation, is, nevertheless, revocable at the option of the licensor, and this, although the intention was to confer a continuing right and money had been expended by the licensee upon the faith of the license. This is plainly the rule of the statute. It is also, we believe, the rule required by public policy. It prevents the burdening of lands with restrictions founded upon oral agreements, easily misunderstood. It gives security and certainty to titles, which are most important to be observed against defects and qualifications not founded upon solemn *285 instruments. The jurisdiction of courts to enforce oral contracts for the sale of land, is clearly defined and well understood, and is indisputable; but to change what commenced in a license into an irrevocable right, on the ground of equitable estoppel, is another and quite different matter. It is far better, we think, that the law requiring interests in land to be evidenced by deed, should be observed, than to leave it to the chancellor to construe an executed license as a grant, depending upon what, in his view, may be equity in the special case.” In White v. Manhattan Railroad Co., 139 N. Y., 19, the court of appeals ruled that: “It seems that an easement to do some act of a permanent nature upon the lands of another cannot be created by a license, even when in writing and executed upon a good consideration; it can only be created by deed, or conveyance operating as a grant,” In Jackson & Sharp Co. v. The Phila., W. & B. Railroad Co., 4 Del. Ch., 180, it is held that: * ‘ It is settled that at law a license can not create or transfer any interest in land. Hence, a mere license affecting land is, at law, always revocable though granted for a valuable consideration, and though the licensee may have expended money on the faith of it. This rule is modified in equity by the principle of equitable estoppel, but equitable estoppel proceeds always on the basis of preventing fraud. Its effect is to restrain the exercise of a legal right, and this even a court of equity can not do unless there has •been such conduct as would render the assertion of the legal right a fraud. The erection of a side track connecting with a railroad, at the expense of plaintiff, and the subsequent expenditure of large sums of money by it in the erection of car works, from which *286 cars were delivered by means of tbe side track, beld not to estop tbe railroad company from revoking tbeir license to connect the side track with tbe company’s track.” However, tbe matter need not be further pursued since tbe case at bar is disposed of on other grounds presently to be stated, and what has been here said is not to be considered as in any Way modifying tbe rule laid down in previous decisions of this court, but is intended merely as a caution against a blind application of a rule.
That tbe railway company has no right to maintain and use tbe siding without permission of tbe owner of tbe land must be concluded from tbe considerations following. Tbe agreement does not purport to grant any interest in tbe land. An interest in tbe land was not necessary to tbe accomplishment of tbe object of tbe agreement, and there is nothing in tbe agreement or in tbe circumstances surrounding tbe parties at tbe time they entered into it from which may be inferred an intention to grant such an interest. Tbe railway company did not pay for the privilege of putting in a siding for its benefit. It received pay for constructing tbe siding on tbe owner’s land and for tbe owner’s sole benefit. No right to use it otherwise is provided for in tbe agreement, nor is it provided that tbe owner shall ship on plaintiff’s road. The contract is with Rodefer Brothers, tbe defendant is not privy to it and not bound by it, and if be does not choose to use tbe siding for shipping or receiving freight what possible benefit could tbe plaintiff derive from maintaining it ? Tbe sole obj ect of tbe agreement, so far as relates to tbe siding, was to secure an accommodation from tbe railway company for tbe owner of tbe land, not *287 to grant to the railway company a privilege in the owner’s land. The siding being on the land of the defendant and solely for his benefit, he may termi-' nate the right to maintain it and may require its removal. The following observations of defendant’s counsel seem pertinent. “This is an important question. Hundreds of manufacturing plants have paid railroad'Companies for building switches on their premises, leading to their factories, which were designed and intended for their accommodation only, and if it is the law that when the railroad company builds the switch its interest in the ground on which the switch is built is superior to that of the owners to extend or remodel their factories; that the railroad company, by so doing, acquires a. permanent easement in or interest in the grounds on which the switch is located that is superior to all rights of the owners, then it is high time that the manufacturing plants were finding it out. ’ ’
The judgment of the circuit court is reversed and upon the facts found judgment is rendered for the plaintiff in error and the petition is dismissed.

Reversed and judgment for plaintiff in error.

Davis, C. J., Price and Spear, JJ., concur.