Abraham N. Geller, J.
This action, brought by plaintiff, a tenant, against defendant, the landlord, is basically a dispute over the construction of a lease. The demised premises, used by plaintiff for restaurant purposes, are located on the easterly side of University Place, in the borough of Manhattan, city of New York, extending from the northerly side of 8th Street to the southerly side of 9th Street, the store being approximately 36 feet on University Place by 73 feet on 8th Street, and known as 30 East 9th Street.
It is necessary to determine whether plaintiff’s rights to use the sidewalk space on University Place in front of the demised store premises, between the building line and lot line, may be terminated at the will of the defendant during the term of the lease, as defendant contends. Plaintiff asks for determination *298 that its right to use such space is not terminable by the defendant during the term of the lease and asks a mandatory injunction ordering the defendant to execute any application or other documents which are essential to enable plaintiff to obtain from the city or other governmental agency the permits that are required to maintain and operate a sidewalk cafe in front of the demised premises. The complaint also asks damages for any losses caused by defendant’s failure to carry out the terms of the lease, but since no damages have been proved, this claim is deemed abandoned.
Plaintiff’s assignor, as tenant, and the defendant, as landlord, entered into a lease for the premises described above on or about the 23d day of May, 1955 for a term of 10 years. Said lease contained, among other provisions, the following clauses:
‘ ‘ Par. 2. Tenant shall use and occupy demised premises for a restaurant for the service of food and non-alcoholic beverages as provided for herein, including the commercial operation of a soda fountain, including the sale of bottled beer and for no other purpose.”
“ Par. 49. This lease includes the permissible use of the sidewalk in front of and adjacent to the leased premises fronting on University Place up to the lot line belonging to Landlord. Any use of said portion by Tenant must conform to any and all rules and regulations of all governmental departments having jurisdiction of same. It is distinctly understood that Landlord does not warrant that the portion of the lot herein referred to can be used in conjunction with the leased premises, also that the use of the portion of the said premises by Tenant shall be that of a Licensee.”
Plaintiff, who operates a restaurant in the demised premises, desires to construct and operate a ‘ ‘ sidewalk cafe ’ ’ in front of its restaurant on the University Place side of the demised premises. Plaintiff claims that the lease, and more particularly paragraph 49 thereof above quoted, gives it rights to the sidewalk space for the duration of the lease, subject to the approval of the proper governmental authorities, and that said rights are not terminable at the will of the defendant.
Defendant relies on the last part of paragraph 49 of the lease, which provides “ * * * also that the use of the portion of the said premises by Tenant shall be that of a Licensee Defendant claims that such use of the word “ Licensee ” shows that plaintiff’s rights to the sidewalk space are terminable at the will of the defendant and it claims that it has effectively-terminated such rights.
*299 The evidence shows that defendant is the lessor of the whole of the premises in which the restaurant is located; that it erected the building of which the demised premises form a part; that part of the front of the building is set back from the lot line on University Place, and that all of the restaurant store front on said street is so set back; that plaintiff opened its restaurant in the latter part of November, 1955; that the main entrance to the restaurant is at the corner of 8th Street and University Place; that there is a second door, which is the legally required secondary means of exit, on the 8th Street side; that there is also a door on University Place leading from the interior of the restaurant to the sidewalk space in question to be used for a sidewalk cafe; that the sidewalk cafe is to have appropriate lighting and an overhead awning; that said latter door was put in by defendant at plaintiff’s expense; and that there is another store in the building, occupied as a Schrafft’s Bake Shop, on University Place, adjoining on the north the restaurant and the sidewalk space in question.
The evidence also shows that the plaintiff submitted to defendant two drawings of the proposed sidewalk space to be used as a sidewalk cafe, which drawings indicate that the said sidewalk space is to be fenced in by a hedge on three sides, the fourth side of the quadrangle being formed by the restaurant store front. The last of the two drawings so submitted showed that one of the three sides of the hedge runs substantially at right angles to the building, is about 15 feet south of the entrance of the Schrafft’s Bake Shop adjoining on the north on University Place, and that the sidewalk cafe will have approximately 13 tables to accommodate patrons.
The evidence also shows that plaintiff requested that defendant sign an “ Authorization Of Owner ” form supplied by the department of housing and buildings of the City of New York, which would permit the construction work for such outdoor restaurant use, but that defendant refused to sign such form and stated that it would not consent to the maintenance of a sidewalk cafe.
The defendant claims that plaintiff has merely a revocable license to the outside space, that it has terminated such license, and that it will not execute any papers or do anything to allow plaintiff to have the “ permissible use of the sidewalk [space] in front of and adjacent to the leased premises fronting on University Place ”.
It also would appear from the evidence that the department of housing and buildings requires that the form of “ Authorization Of Owner ” supplied by it, be submitted in order to file *300 the plans for the construction of such outdoor space and to procure a permit for such construction work.
The first question to be determined is: “May plaintiff’s rights to the sidewalk space be terminated during the term of the lease at the will of the defendant? ” This involves a construction of the language of the lease to ascertain wha't rights to the sidewalk space the parties intended to grant to plaintiff.
Defendant bases its entire case on its claim that the use of the word “ Licensee ” in paragraph 49 of the lease is conclusive. Defendant relies on one of the common definitions of license, which it quotes in its memorandum of law, namely, “ a personal, revocable and non-assignable privilege, conferred either by writing or parol, to do one or more acts upon land without possessing any interest therein.” This definition is found in the leading case of Greenwood Lake & Port Jervis R. R. Co. v. New York & Greenwood Lake R. R. Co. (134 N. Y. 435).
However, it is clearly the law of this State that the mere use of the words “ license ” or “ licensee ” in a written agreement does not necessarily confer merely a “ license ” in the limited sense defined above. In the Greenwood case, the court held that an easement was in fact granted, although the instrument involved referred merely to a “ license ”. The Court of Appeals wrote, in construing this language (p. 439): “ "While the instrument creating the right is termed in the body thereof, a ‘ license to use said railroad ’, this is not conclusive for the court must look at the nature of the right rather than to the name that the parties gave it, in order to learn its true character ”.
Other cases where language generally similar to that of the Greenwood case has been held to give rights which are irrevocable, include Bagg v. Robinson (12 Misc. 299) and Meers v. Munsch-Protzmann Co. (217 App. Div. 541).
In the Bagg case, the language spoke of an “ exclusive privilege ”. The court said (pp. 304, 305): “ But it seems to be now pretty firmly established that mere words will not govern, but the court will look at the nature of the right rather than the name by which it is called. And while in the present case the language used in the lease granting the right to sell, in a strict sense, are words of license, yet the court is not bound by the technical meaning of the words, and will look at the end sought to be accomplished by the instrument, in the light of surrounding circumstances, force being given to practical construction of the instrument by acts of the parties, where such construction does not do violence to its terms ”. In the Meers case, the language of the instrument gave “permission” to *301 operate a soda fountain, but the court held that the so-called permission was not revocable.
This court, in construing the language of paragraph 49 of the lease here involved, will rely on two basic principles of construction. The first principle is that a written instrument will be read as a whole and every part will be interpreted with reference to the whole. (3 Williston on Contracts, § 618, subd. 3; cf. Empire Properties Corp. v. Manufacturers Trust Co., 288 N. Y. 242.) The second principle is that in interpreting a writing, the circumstances leading up to and surrounding its execution may be examined. (3 Williston on Contracts, § 618, subd. 4; cf. Petrie v. Trustees of Hamilton Coll., 158 N. Y. 458.)
The court will therefore look at the written instrument as a whole and the circumstances leading up to and attending its execution to ascertain the intent of the parties and will not, in the words of Judge Learned Hand, ‘ ‘ make a fortress out of the dictionary ” (Cabell v. Markham, 148 F. 2d 737, 739, affd. 326 U. S. 404). For “ [t]here is no more likely way to misapprehend the meaning of language — -be it in a constitution, a statute, a will or a contract — than to read the words literally, forgetting the object which the document as a whole is meant to secure.” (Central Hanover Bank & Trust Co. v. Commissioner of Internal Revenue, 159 F. 2d 167, 169.)
The lease provides for the letting of store space for a term of years. It provides for the use of said store premises as a restaurant for the serving of food and nonalcoholic beverages, including the operation of a soda fountain and the sale of bottled beer. The first sentence of paragraph 49 states that the lease “ includes the permissible use of the sidewalk in front of and adjacent to the leased premises.” (Italics added.) Then follow two extremely important sentences: ‘ ‘ Any use of said portion by Tenant must conform to any and all rules and regulations of all governmental departments having jurisdiction of same. It is distinctly understood that Landlord does not warrant that the portion of the lot herein referred to can be used in conjunction with the leased premises, also that the use of the portion of the said premises by Tenant shall be that of a Licensee.”
The first part of the last sentence just quoted makes it clear that the landlord does not warrant that the sidewalk space referred to ‘ ‘ can be used ’ ’ in conjunction with the leased premises. In the court’s opinion, the logical interpretation and intended meaning of the words “ can be used ” is, “ can legally be used ”, that is “ can be used ” with the permission of the public authorities. The second part of the same sentence speaks *302 of tenant’s use of the sidewalk as being that of a “ Licensee Following, as it does the previous sentence, with its requirement of compliance by the tenant with governmental regulations, and the first part of the same sentence which makes it clear that the landlord does not warrant that the tenant’s proposed use of the sidewalk space will be legal, i.e., will be approved by the governmental authorities, the second half of the last sentence quoted above can only mean, as I see it, that plaintiff’s rights are those of a licensee in relation to governmental authorities.
The definition of “ licensee ” which defendant is contending for, namely, “ a personal, revocable and non-assignable privilege ”, is only one of several definitions and common uses of this word. “ License ” is also defined in Webster’s New International Dictionary (2d Ed., 1950) as “ formal permission from the proper authorities to perform certain acts or to carry on a certain business which without such permission would be illegal ”. That this definition of license is as well known as the definition contended for by defendant herein, is shown by an examination of other dictionaries, as well as legal digests, such as Abbott New York Digest 2d (Vol. 16, p. 702) and Corpus Juris Secundum (Vol. 53, p. 440).
The defendant is therefore in error in treating the word “ license ” as if it has only one widely used and acceptable meaning.
In this case, therefore, I find and decide that' ‘ Licensee ’ ’ as used in paragraph 49 of the lease did not refer to the relationship between plaintiff and defendant but to the relationship which might come into being between plaintiff and governmental authorities. Among the governmental authorities which the parties presumably had in mind are the department of housing and buildings, which requires a permit before any construction may be commenced (Administrative Code of City of New York, § C26-161.0 et seq.) and perhaps also the department of licenses, which must issue a license before any sidewalk cafe may be operated (Administrative Code, § B32-53.0 et seq.).
The word “ Licensee ”, as used in paragraph 49, involving as it does merely the possible relationship between plaintiff and governmental authorities, does not in any way qualify or limit the words “permissible use of the sidewalk” used earlier in paragraph 49 and does not make the so-called “ permissible ” rights revocable at defendant’s will during the term of the lease.
Defendant emphasizes a further argument in an attempt to establish that “ Licensee ” is used in paragraph 49 in the sense it contends. It points to paragraph 42 of the lease, which pro *303 vides as follows: “ 42. Tenant shall be deemed in possession of the premises under this lease when the premises are delivered to Tenant in accordance with Landlord’s plans and when Landlord has secured either a permanent or temporary Certificate of Occupancy for the leased premises and the sidewalk in front of and adjacent to the premises is ready with no obstruction thereon. Tenant shall be permitted to occupy these premises rent free prior to the time of delivery of the premises hereunder for the purpose of installing its trade fixtures and doing any other work so as to make the leased premises suitable for Tenant’s business providing Tenant employs Union Labor, and it is not interfering with Landlord’s activities in connection with the construction of the building of which the leased premises form a part. It is also specifically understood that any occupancy by the Tenant under such circumstances shall constitute the Tenant a Licensee.” Even if the word “ Licensee ” is used in this paragraph to indicate one who has “ a personal, revocable and non-assignable privilege ” prior to commencement of plaintiff’s lease, it does not follow that because “ Licensee ” is there so used, it is also similarly used in paragraph 49. Paragraph 49 deals with the relationship between governmental authorities and the plaintiff and paragraph 42 deals with the relationship between plaintiff and defendant.
The meaning of the word “ Licensee ” in each of said two paragraphs of the lease must be construed separately. Moreover, the meaning of “ Licensee ” in paragraph 42 is far from clear, since once plaintiff was “ permitted to occupy these premises * * * for the purpose of installing its trade fixtures ” and did perform work and acts on the premises “ suitable for Tenant’s business ”, it is indeed questionable whether, as a matter of law, plaintiff was then merely a “ licensee ” in the sense contended for by defendant.
Although the use of the word ' ‘ Licensee ’ ’ in paragraph 42 does not have the significance defendant attributes to it, the first sentence of paragraph 42 does seem to be significant in refuting defendant’s contention, when we read it in toto, including the words therein “ and when Landlord has secured either a permanent or temporary Certificate of Occupancy for the leased premises and the sidewalk in front of and adjacent to the premises is ready with no obstruction thereon.” (Italics added.)
The addition of the said italicized language (relative to the sidewalk being ready with no obstruction), following the words which require the landlord to secure a certificate of occupancy *304 for the leased premises, would, when considered together with paragraph 49, indicate that the parties contemplated that the tenant was to have the right to use the sidewalk.
When the court views the lease in its entirety, the purpose for which the store was let by the plaintiff, the fact that the University Place side of the building where the demised premises are located was set back from the lot line, that an extra third door was erected by the landlord on the said University Place side of the leased premises, albeit at tenant’s expense, that there are several such sidewalk cafes in the vicinity of the said premises, and taking into consideration all of the evidence adduced herein, the conclusion is inescapable that it was the intention of the parties that plaintiff, as tenant, has the right, during the term of the lease, to use the sidewalk for cafe purposes, subject to the leave and license of the city or other governmental authorities, but without any warranty on the part of defendant-landlord that the public authorities will permit plaintiff-tenant the continued exercise of that right.
It is unnecessary, as I see it, to characterize or label the plaintiff’s right under the lease, as construed in this opinion, to use and occupy the sidewalk area in question. Whether this right be regarded as an easement, a demise or something else, the essential thing is that it is a right created by and under the lease, that defendant cannot frustrate or terminate it at will, and that plaintiff has no adequate remedy at law for defendant’s refusal to allow plaintiff to make proper application to the public authorities to utilize that right.
Plaintiff also asks “ that the defendant be ordered and decreed to execute any necessary application or other documents to enable plaintiff to obtain the necessary permits from City or other governmental agencies to maintain and operate the said sidewalk cafe in front of its demised premises.”
This litigation was instituted after defendant’s refusal to execute the “ Authorization Of Owner ” form above described, which plaintiff claims must be signed by defendant as ‘ ‘ owner ’ ’ of the property and submitted to the department of housing and buildings of the City of New York in order to obtain a construction permit to install an outdoor restaurant-cafe.
Section 22 of the Zoning Resolution of the City of New York, cited by plaintiff, does not apply to the application for the necessary building permit. This section deals with the issuance of a certificate of occupancy, which will be required later on, after the work is performed. In the instant case, we are dealing with the situation of obtaining a permit to do construction work. *305 The need for a certificate of occupancy will arise when and if the construction work is completed.
The Administrative Code of the City of New York, Title C, Building Code (§ C26-161.0 et seq.) deals with the requirement for obtaining a permit before constructing or altering any structure and the forms of application for such permit. Section C26-161.0 deals with the form of application where the owner of the premises is performing the construction. Section C26-166.0 provides that if a person other than the owner in fee intends to perform the construction, he shall file with his application for a permit a sworn statement giving the name of the owner and reciting that he is authorized to perform the work.
Section C26-103.0 defines the owner for purposes of the building code, among other things, as a lessee or joint lessee of the whole thereof. Defendant under this section is clearly an “ owner ”.
It would appear, although not too clearly, from the language of section C26-166.0 that the statement in writing to accompany the application need only be filed by plaintiff or its agent, licensed architect or licensed engineer, but the court, of course, does not decide this question. However, if the department of housing and buildings does requiré that plaintiff submit to it a signed authorization of the owner, defendant will be required to sign such a statement.
Under all of the circumstances, and in view of this court’s construction, stated above, of paragraph 49 of the lease, it seems clear to me that the obligation of the defendant to execute and file with the City of New York the appropriate application or authorization which would enable the plaintiff to have, so far as allowed by law and subject to the requirements of governmental authority, that which the defendant contracted to give the plaintiff, namely, “ the permissible use of the sidewalk in front of and adjacent to the leased premises fronting on University Place up to the lot line belonging to Landlord ”, may and should be implied and read into the lease. (Genet v. Delaware & Hudson Canal Co., 136 N. Y. 593, 608-609; Kirke La Shelle Co. v. Armstrong Co., 263 N. Y. 79, 87; Wilson v. Mechanical Orguinette Co., 170 N. Y. 542, 550-551; Patterson v. Meyerhofer, 204 N. Y. 96, 101.)
In speaking of implied promises, Judge Finch, in the Genet case, wrote as follows (136 N. Y. 593, 608-609): “ I know very well that implied promises are to be cautiously and not hastily raised. What they are was very well stated in Scranton v. Booth *306 (29 Barb. 174), in Allamon v. Mayor of Albany (43 id. 36), and in Booth v. Cleveland Rolling Mills Co. (6 Hun 597). They always exist where equity and justice require the party to do or to refrain from doing the thing in question; where the covenant on one side involves some corresponding obligation on the other; where by the relations of the parties and the subject-matter of the contract a duty is owing by one not expressly bound by the contract to the other party in reference to the subject of it. In this court we have thrown some safeguards about the doctrine to secure its prudent application, and have said that a promise can be implied only where we may rightfully assume that it would have been made if attention had been drawn to it (Dermott v. The State, 99 N. Y. 101), and that it is to be raised only to enforce a manifest equity, or to reach a result which the unequivocal acts of the parties indicate that they intended to effect. (King v. Leighton, 100 N. Y. 386.) ”
Williston on Contracts (Vol. 5, § 1293A), has this to say on the subject: “ ‘ Where a party stipulates that another shall do a certain thing, he thereby impliedly promises that he will himself do nothing which will hinder or obstruct that other in doing that thing.’ Often, indeed, the situation is such that the cooperation of one party is an essential prerequisite to performance by the other, in which case there is not only a condition implied in fact qualifying the promise of the latter, but, as already stated, an implied promise by the former to give the necessary cooperation.”
The court does not herein prescribe the precise form of “ authorization ” to be signed by the owner. The court suggests that counsel for both sides endeavor to work out, after conferring with the department of housing and buildings, the “ authorization ” form to be signed by the defendant. If the parties do not agree on such “ authorization ” form, the court will pass on said form to be incorporated in the judgment.
Defendant’s motions to dismiss made at the end of plaintiff’s case, and at the end of the whole case, on which decisions were reserved, are denied. The case is disposed of and plaintiff is entitled to relief in accordance with this opinion.
This constitutes the decision of the court in accordance with section 440 of the Civil Practice Act.
Settle judgment accordingly.