(158 App. Div. 829.)

### UNION LAND CO. v. GWYNN.

(Supreme Court, Appellate Division, First Department. November 7, 1913.)

PARTNERSHIP (§ 173\*)—BONDS—UNDERWRITING AGREEMENT—CONSTRUCTION—SIGNATURE—DESCRIPTIO PERSONÆ.

 An underwriting agreement signed by defendant provided that the managers were authorized to take up or guarantee the payment of any notes issued by the railways company in payment or part payment for any or all of the $409,000 of the bonds of the Southern Railroad. The managers were designated in the first clause of the agreement as J. and W., general partners, and G. T. J., special partner, doing business under the firm name of J. & Co. in the city of New York, "hereinafter called managers, parties of the first part," etc. *Held*, that by such language it was the individual members of the firm of J. & Co., and not the firm, who were made managers, the reference to their association as a firm being mere descriptio personæ; and hence a document by which it was proposed to guarantee a note of the railways company and to assign the underwriting agreement to a trust company, not signed by all of the managers individually, but by only one of them, who added to his own that of the firm, was ineffective to create any liability against the underwriters.

 [Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 304, 305; Dec. Dig. § 173.\*]

Appeal from Judgment on Report of Referee.

Action by the Union Land Company against Joseph K. Gwynn. From a judgment for defendant, entered on report of a referee, plaintiff appeals. Affirmed.

The following is the referee's report:

### "Findings of Fact.

"I. On or about the 25th day of September, 1904, a certain Texan Southern Railway Company had issued and outstanding 792 first mortgage 5 per cent. gold bonds of the par value of $1,000 each, secured by a mortgage made by the said Texas Southern Railway Company to United States & Mexican Trust Company, dated July 1, 1902.

"II. Prior to the 25th day of September, 1904, default in payment of interest on the said bonds, referred to in finding of fact I, had been made. And prior to said 25th day of September, 1904, proceedings had been commenced in the district court of Harrison, Tex., to foreclose the said mortgage referred to in finding of fact I.

"III. On or about the 25th day of September, 1904, a certain plan and agreement of reorganization of the said Texas Southern Railway Company was prepared by a reorganization committee, consisting of Henry C. Rouse, president of the Missouri, Kansas & Texas Railway Company, and Frederick M. Hubbell of Des Moines, Iowa, which provided for the deposit of the said bonds, referred to in finding of fact I, with the St. Louis Union Trust Company of St. Louis, Mo., as depositary, and further provided that the said bonds deposited under said plan and agreement should be held by the said depositary subject to the order and control of the committee. A copy of said plan and agreement of reorganization is in evidence as Plaintiff's Exhibit B.

"IV. Prior to the 4th day of August, 1906, the said Frederick M. Hubbell, referred to in finding of fact III, deposited with the said St. Louis Union Trust Company, as depositary, under the aforesaid plan and agreement of reorganization, 401½ of the said 5 per cent. first mortgage gold bonds of the Texas Southern Railway Company, of the par value of $1,000 each. Prior to the 4th day of August, 1906, the said Frederick M. Hubbell also deposited with the St. Louis Union Trust Company, as depositary under the aforesaid plan and agreement, a certain judgment rendered in Marshall, Tex., in an action in which a certain W. A. Chatterton was plaintiff, and the Texas Southern Railway Company was defendant, wherein it was decreed that the plaintiff Chatterton was entitled to 15 bonds of the same issue as the other 792 first mortgage 5 per cent. gold bonds, referred to in finding of fact I, one-half of which said judgment was owned by said Frederick M. Hubbell. The said 401½ bonds and the said judgment were deposited by said Frederick M. Hubbell, subject to all of the terms and provisions of the aforesaid plan and agreement of reorganization.

"V. On depositing the said 401½ bonds of the Texas Southern Railway Company, referred to in finding of fact IV, the said Frederick M. Hubbell received from the aforesaid St. Louis Union Trust Company, as depositary, receipts for said 401½ bonds, all of said receipts being in the form of the receipt in evidence as Defendant's Exhibit 2. On the depositing of the said Chatterton judgment, referred to in finding of fact IV, the said Frederick M. Hubbell received from the said St. Louis Union Trust Company, as said depositary, a receipt for his interest therein.

"VI. On the 4th day of August, 1906, the said Frederick M. Hubbell was the owner of the said depositary receipts for the said 401½ bonds of the Texas Southern Railway Company, and the said depositary receipt for the said Chatterton judgment, mentioned in finding of fact V. On the 4th day of August, 1906, the only right, title, and interest in and to any of the outstanding 807 first mortgage five per cent. gold bonds of the Texas Southern Railway Company, mentioned in finding of fact IV, owned and possessed by the said Frederick M. Hubbell, were such as was represented by the aforesaid depositary receipts for 401½ of the said bonds, and the aforesaid receipt for the said Chatterton judgment.

"VII. Neither on the 4th day of August, 1906, nor at any other time prior to the 25th day of October, 1906, had there been deposited with the said St. Louis Trust Company as depositary, under the aforesaid plan and agreement of reorganization, the said 7½ 5 per cent. gold bonds of the Texas Southern Railway Company, nor any of them, representing the interest of Frederick M. Hubbell in and to the said Chatterton judgment, referred to in finding of fact IV.

"VIII. On the 4th day of August, 1906, at Kansas City, state of Missouri, the said Frederick M. Hubbell entered into an agreement with Jester & Co., a firm composed of Claude W. Jester and Martin S. Watts, general partners, and George T. Jester, special partner, of the city of New York, which said agreement is in evidence as Plaintiff's Exhibit A.

"IX. The said agreement, referred to in finding of fact VIII, was prepared and drafted by attorneys employed by said Frederick M. Hubbell.

"X. On the signing of said agreement, referred to in finding of fact VIII, the said Jester & Co. paid to the said Frederick M. Hubbell the sum of $5,417 cash, pursuant to the terms of said agreement.

"XI. On or about the 26th day of September, 1906, a certain Texas railways company was caused to be incorporated by said Jester & Co. under the laws of the state of New Jersey, for the purpose, among other things, of acquiring by purchase, subscription, or otherwise, bonds, stocks, or other securities or evidences of indebtedness of any corporation or association, and to sell, assign, transfer, mortgage, pledge, or otherwise hold or dispose of the same.

"XII. On or about the 27th day of September, 1906, the said Texas Railways Company caused to be enacted certain resolutions, a true copy of which said resolutions is in evidence as Plaintiff's Exhibit N, which said resolutions, among other things, authorized the said Texas Railways Company to accept an assignment of all of the right, title, and interest of said firm of Jester & Co. in and to said agreement of August 4, 1906, referred to in finding of fact VIII.

"XIII. On or about the 28th day of September, 1906, by instrument in evidence as Plaintiff's Exhibit P, the said firm of Jester & Co. sold and assigned all their right, title, and interest in and to the said agreement of August 4, 1906, referred to in finding of fact VIII, to the said Texas Railways Company.

"XIV. On or about the 28th day of September, 1906, the said Texas Railways Company and the said firm of Jester & Co. entered into an agreement in evidence as Plaintiff's Exhibit O, wherein and whereby the said Texas Railways Company gave to the said Jester & Co. the right, privilege, and option, at any time before April 1, 1908, to purchase $225,000 in amount of its collateral trust 5 per cent. gold bonds, or any part thereof, at the price of 92½ and accrued interest, the payment of said bonds to be secured by executing to the Knickerbocker Trust Company of New York a deed of trust of all of the property, franchises, and assets of the said Texas Railways Company.

"XV. Neither the said deed of trust to the Knickerbocker Trust Company of New York, referred to in finding of fact XIV, nor the said $225,000 of the collateral trust 5 per cent. gold bonds to be secured by said deed of trust, nor any of them, were ever issued by the said Texas Railways Company.

"XVI. Prior to the 1st day of October, 1906, the said firm of Jester & Co. caused to be prepared a form of syndicate agreement, underwriting the purchase of the said $225,000 of collateral trust 5 per cent. gold bonds of the Texas Railways Company, referred to in finding of fact XIV, at the price of $925 per bond of the par value of $1,000. At the request of the aforesaid Frederick M. Hubbell, the form of the said syndicate agreement was submitted to him for his approval. The said Frederick M. Hubbell suggested a certain change in the form of the said syndicate agreement, and such change was thereupon made by Jester & Co.

"XVII. Prior to the 1st day of October, 1906, the defendant was shown a prospectus by the said Martin S. Watts, a general partner in the firm of Jester & Co., mentioned in finding of fact VIII, a copy of which said prospectus is in evidence as Plaintiff's Exhibit R. This prospectus set forth a plan for the acquisition by the Texas Railways Company of a majority of the $807,000 outstanding said first mortgage 5 per cent. gold bonds of the Texas Southern Railway Company, mentioned in finding of fact VI, and of practically all the

$79,980 of the stock of said company. This prospectus stated that against the acquirement of the aforesaid securities of the Texas Southern Railway Company, the said Texas Railways Company will issue common stock to an amount not more than $450,000, which statement was misleading, in that the authorized common stock of said company was only $200,000. This prospectus contained the statement that arrangements had already been made for the acquirement of $430,000 of the bonds of the Texas Southern Railway Company, which statement was untrue, in that no arrangements had been made for the acquirement of any bonds, but only that the right, title, and interest of the said Frederick M. Hubbell in and to certain bonds deposited with the said Reorganization Committee under the provisions of the said plan and reorganization agreement, referred to in finding of fact III. This prospectus stated that the indebtedness against the Texas Southern Railway Company, prior in lien to the said bonds, approximated $280,000, which statement was untrue, in that the indebtedness, prior in lien to the said bonds, amounted to a sum very considerably in excess of the said sum of $280,000. This prospectus failed to state that default had already occurred upon the said bonds of the Texas Southern Railway Company, and that the mortgage securing those bonds then was, and for two years prior thereto had been, under foreclosure. This prospectus failed to state that the bonds of the Texas Southern Railway Company, which it proposed to acquire, were on deposit with the said Reorganization Committee, pursuant to the provisions of the said reorganization plan and agreement, referred to in finding of fact III.

"XVIII. Thereafter, the said Martin S. Watts asked the defendant to sign a printed underwriting agreement of the form of the agreement corrected and approved by the said Frederick M. Hubbell, as described in finding of fact XVI. The defendant, relying upon the representations contained in the prospectus, thereupon signed said printed agreement and delivered it to the said Martin S. Watts. The copy of the said printed agreement, so signed by the defendant, is in evidence as Plaintiff's Exhibit F. The defendant signed said printed agreement at least several days before the 1st day of October, 1906.

"XIX. The said syndicate agreement, signed by this defendant, referred to in finding of fact XVIII, was an agreement made between Claude W. Jester and Martin S. Watts, general partners, and George T. Jester, special partner, doing business under the firm name and style of Jester & Co., in the city of New York, in said syndicate agreement called 'managers,' parties of the first part, and this defendant and such other persons or corporations as should sign the syndicate agreement, or accept an assignment of a participation thereunder, therein called 'Participants.'

"XX. At the time of the signing of the said agreement, referred to in finding of fact XVIII, the defendant had never met nor had any communication with the said Claude W. Jester, nor any other member of the said firm of Jester & Co., except the said Martin S. Watts. Neither at the time of the signing of said agreement, nor until the trial of this action, did the defendant have any knowledge of the contents or existence of said contract of August 4, 1906, referred to in finding of fact VIII, nor of the contents or existence of the resolutions, referred to in finding of fact XII, nor of the contents or existence of the instrument assigning the said August 4th contract to the Texas Railways Company, referred to in finding of fact XIII, nor of the contents or existence of the option referred to in finding of fact XIV.

"XXI. After the defendant had signed the said syndicate agreement, referred to in finding of fact XVIII, and delivered it to the said Martin S. Watts, the said Jester & Co., wrote upon the said underwriting agreement, signed by the defendant, above the signature of the defendant, the words 'effective Oct. 1, 1906, Jester & Co., Managers.'

"XXII. At the time of the signing of the said agreement, mentioned in finding of fact XVIII, the defendant paid the sum of $625 to the syndicate managers in the city of New York. The sum of $625 was so paid by this defendant prior to the 1st day of October, 1906, at a time before the agreement became effective. Under the terms of the said syndicate agreement no payment was due upon it from the defendant or any other of the participants until

144 N.Y.S.—8

November 1, 1906, and no money received from the defendant, or any of the other participants, was to be applied as a payment upon it until said 1st day of November, 1906.

"XXIII. The managers were required by the terms of the said syndicate agreement, referred to in finding of fact XVIII, to use all sums of cash received by them from this defendant, and from the other participants, as payments upon the said agreement, for one purpose only, namely, for the purpose of acquiring, for the joint account of the participants, all of the aforesaid $225,000 of bonds of the Texas Railways Company, referred to in finding of fact XIV, as the same should be issued by the said Texas Railways Company, but the managers were authorized to retain any such moneys received from the participants until the termination of the agreement, in the event that no bonds of the Texas Railways Company should be issued. But the said Claude W. Jester, one of the syndicate managers, in violation of the terms of the said agreement, did not use the said $625 received by the managers from the defendant for the purposes of acquiring any bonds of the Texas Railways Company, and did not retain the same until the termination of the agreement, but, in violation of the terms of that agreement and with the knowledge and under the direction of the said Frederick M. Hubbell, paid the said sums so received by the managers from the defendant to the aforesaid Frederick M. Hubbell in St. Louis, Mo., on the 1st day of October, 1906, the said $625 so paid to the said Frederick M. Hubbell being part of the sum of $20,000 paid to him on the 1st day of October, 1906, by Claude W. Jester.

"XXIV. At the time of the making of the said payment of $20,000 to the said Frederick M. Hubbell by said Claude W. Jester, referred to in finding of fact XXIII, the said Frederick M. Hubbell tried to withdraw from the St. Louis Trust Company the aforesaid 401½ first mortgage 5 per cent. gold bonds of the Texas Southern Railway Company, and the aforesaid Chatterton judgment deposited by the said Frederick M. Hubbell with said St. Louis Union Trust Company, as depositary under the aforesaid reorganization plan and agreement as set forth in finding of fact IV, but did not obtain them or any of them.

"XXV. Neither upon the making of the said payment of $20,000 to the said Frederick M. Hubbell, referred to in finding of fact XXIII, nor at any other time, was the said 401½ first mortgage 5 per cent. gold bonds of the Texas Southern Railway Company, or any of them, or the said Chatterton judgment, received by the said Frederick M. Hubbell, or delivered by him to the said Claude W. Jester, or to any other of the said syndicate managers, or to the said Texas Railways Company, or to the defendant, or to any representative of the defendant.

"XXVI. The defendant was never informed by Jester & Co., nor by any member of that firm, and had no knowledge prior to the year 1908, that the said sum of $625 paid by him was given to the said Frederick M. Hubbell, as set forth in finding of fact XXIII, and the defendant was never informed by Jester & Co., and had no knowledge prior to the year 1908, that none of the aforesaid first mortgage 5 per cent. gold bonds of the Texas Southern Railway Company were delivered by the aforesaid Frederick M. Hubbell to the said syndicate managers at the time of the aforesaid payment.

"XXVII. On the 1st day of October, 1906, at the same time and place as that of the said payment of $20,000 referred to in finding of fact XXIII, Claude W. Jester also tendered to the said Frederick M. Hubbell in payment of the sum due on the aforesaid contract of August 4, 1906, referred to in finding of fact VIII a note for the sum of $175,000 signed by the Texas Railways Company and payable to the order of the said Frederick M. Hubbell, a copy of which said note is in evidence as Defendant's Exhibit 1. But the said Frederick M. Hubbell, upon advice of counsel, refused to accept such note, and insisted that the Texas Railways Company make out a note for the said amount, payable to the order of the aforesaid St. Louis Union Trust Company, instead; and the said Frederick M. Hubbell had previously made arrangements with the said St. Louis Union Trust Company to have the note made payable to it.

"XXVIII. On the 1st day of October, 1906, the amount of the fees and expenses of the said Reorganization Committee of the said Texas Southern Rail-

way Company, referred to in finding of fact III, approximated the sum of $15,000.

"XXIX. On the 1st day of October, 1906, Jester & Co. mailed to the defendant a notice, which is in evidence as Plaintiff's Exhibit K.

"XXX. On the 3d day of October, 1906, the said Frederick M. Hubbell sent by mail to the said firm of Jester & Co. a form of resolution, setting forth the form of a note of the Texas Railways Company for the sum of $175,000, payable to the order of the aforesaid St. Louis Union Trust Company, and also containing a form of guaranty and assignment to be indorsed upon said note, and directed that the said resolutions should be enacted by the said Texas Railways Company, and that the said guaranty and assignment should be indorsed upon the said note. Thereafter, on or about the 5th day of October, 1906, the said Claude W. Jester caused to be enacted by the said Texas Railways Company, in the form of the aforesaid resolution prepared by Frederick M. Hubbell, a resolution, a copy of which is in evidence as Plaintiff's Exhibit Q, and also caused to be executed by the said Texas Railways Company, in the form of the aforesaid note prepared by Frederick M. Hubbell, a note for $175,000, payable to the order of the St. Louis Union Trust Company, which said note is in evidence as Plaintiff's Exhibit C; and the said Claude W. Jester, in the name of the firm of Jester & Co., also executed, in the form of the aforesaid guaranty and assignment, prepared by Frederick .M. Hubbell, an instrument signed 'Jester & Co., Syndicate Managers, by Claude W. Jester,' guaranteeing the payment of the aforesaid note, and assigning as further security therefor certain underwriting agreements, including that signed by the defendant, referred to in finding of fact XVIII, which said instrument of guaranty and assignment is in evidence as Plaintiff's Exhibit D. The said assignment and guaranty was never signed nor executed by the other two syndicate managers, Martin S. Watts and George T. Jester.

"XXXI. On the 6th day of October, 1906, the said firm of Jester & Co. mailed to the aforesaid St. Louis Union Trust Company, the said note of the Texas Railways Company and the instrument of guaranty and assignment, referred to in finding of fact XXX; the said underwriting agreements, including that signed by the defendant, mentioned in the said instrument of guaranty and assignment, were thereupon by Jester & Co. caused to be deposited with the said St. Louis Union Trust Company as further security for the payment of the aforesaid note of the Texas Railways Company, pursuant to the provisions of the said instrument of guaranty and assignment.

"XXXII. The said note, referred to in finding of fact XXX, recited that the collateral deposited as security for the payment of all and any liability thereunder were the receipts of the St. Louis Union Trust Company issued under the reorganization plan, dated September 26, 1904, for 409 first mortgage 5 per cent. gold bonds of the Texas Southern Railway Company. In fact receipts for only 400 bonds were issued to the Texas Railways Company. The note provided that in the event of the failure to pay interest when due, or the face of the note at maturity, further authority was given to the trust company or its assigns to sell the whole or any part of the aforesaid receipts so deposited as collateral security, without notice or advertisement, either at public or private sale.

"XXXIII. The said instrument of guaranty and assignment signed 'Jester & Co., Syndicate Managers, by Claude W. Jester,' being Plaintiff's Exhibit D, referred to in finding of fact XXX, provided that as further security for the said note Jester & Co. assigned to the St. Louis Union Trust Company all the right, title, and interest of Jester & Co. in and to the said syndicate agreement, and all the liability of the participants thereunder on their respective subscriptions, but there was no provision in the said instrument of assignment giving the right to the St. Louis Union Trust Company, nor to any one else, to foreclose upon the collateral so assigned, or to sell the same or any part thereof without first giving notice of advertisement, and without first offering the same at public sale.

"XXXIV. The defendant had nothing to do with the preparation of the certificate of incorporation of the Texas Railways Company, and was not consulted or advised with by Jester & Co. as to any of the details of its organization or management. The defendant was neither a stockholder nor a director

in the said Texas Railways Company. The defendant had no knowledge of the contents or existence of any of the instruments referred to in finding of fact XXX, prior to the year 1908.

"XXXV. The said St. Louis Union Trust Company never advanced any money upon the aforesaid note of the Texas Railways Company for $175,000, made payable to its order, referred to in finding of fact XXX, but instead received the said note in accordance with the terms of a written agreement with Frederick M. Hubbell that it would give him an ostensible book credit of $175,000 on the deposit of the note, and that he should not be permitted to draw against the said book credit until after he had secured some one to purchase the note from the said St. Louis Union Trust Company for the sum of $175,000. On the deposit of the note said St. Louis Union Trust Company did give to the said Frederick M. Hubbell an ostensible book credit upon the said note of $175,000, pursuant to the terms of said agreement. Prior to the 15th day of October, the said St. Louis Union Trust Company indorsed, without recourse, the said note and guaranty to the said Frederick M. Hubbell. At the time of the said indorsement without recourse of the said note and guaranty, no depositary receipt or receipts of the said St. Louis Union Trust Company for any of the said bonds of the Texas Southern Railway Company, issued under the said plan and agreement of reorganization, referred to in finding of fact III, had been deposited by the said Texas Railways Company with the said St. Louis Union Trust Company. About a month after the said indorsement without recourse of the said note and guaranty, the said Frederick M. Hubbell deposited with the St. Louis Union Trust Company the sum of $175,000, and immediately withdrew the same. This was a mere bookkeeping transaction without the actual passing of any money or other consideration.

"XXXVI. It was the intention and purpose of the said Frederick M. Hubbell, in refusing to accept the note of the Texas Railways Company, made payable to his order as set forth in finding of fact XXVII, and insisting upon the execution of a note instead payable to the order of the said St. Louis Union Trust Company, and in entering into an agreement with the said St. Louis Union Trust Company, referred to in finding of fact XXXV, to the effect that the said trust company should ostensibly discount the note for the said Texas Railways Company, to interpose a seemingly innocent holder between himself and the defendant in order to prevent the defendant in any action brought upon the said agreement signed by him, mentioned in finding of fact XVIII, or upon the agreement of guaranty and of assignment executed by Jester & Co. by Claude W. Jester, mentioned in finding of fact XXX, from interposing any defenses other than those which could be interposed against a person claiming through an innocent holder for value.

"XXXVII. Prior to the 12th day of October, 1906, the said Frederick M. Hubbell surrendered to the St. Louis Union Trust Company the certificates of deposit, referred to in finding of fact V.

"XXXVIII. On or about the 12th day of October, 1906, a certificate, in the form of Plaintiff's Exhibit G—1, was issued to the said Texas Railways Company by the said St. Louis Union Trust Company, as depositary under the said plan and agreement of reorganization, referred to in finding of fact III. The statement in said certificate that the said Texas Railways Company of New York had deposited with the said St. Louis Union Trust Company, as such depositary, 400 bonds of the said Texas Southern Railway Company of $1,000 each, bearing date July 1, 1902, was untrue. The said $400,000 bonds, referred to in said certificate, had in fact been deposited with the said St. Louis Union Trust Company as such depositary by the said Frederick M. Hubbell at a time prior to the 4th day of August, 1906, and had never been withdrawn; and the said Frederick M. Hubbell, at no time between the 4th day of August, 1906, and the date of issuance of said certificate, had withdrawn or received the said 400 bonds, referred to in said certificate, from the St. Louis Union Trust Company as such depositary; and the said 400 bonds at no time prior to the date of said certificate, and at no time subsequent thereto, had ever been delivered by the said Frederick M. Hubbell, or by any one else to the said Texas Railways Company.

"XXXIX. The first semiannual installment of interest upon the aforesaid note of the Texas Railways Company for $175,000, referred to in finding of

fact XXX, amounting to $5,250 became due and payable the 1st day of April, 1907, and was paid in full upon that date. The next semiannual installment of interest upon said note, amounting to $5,250, became due and payable on the 1st day of October, 1907, and was likewise paid in full. On the 30th day of March, 1908, there was no interest nor principal due upon said note.

"XL. On the 4th day of March, 1908, there was written to the said Frederick M. Hubbell, in behalf of the defendant, a letter in evidence as Defendant's Exhibit 12 and on the 30th day of March, 1908, there was written in behalf of the defendant to the said Frederick M. Hubbell a letter in evidence as Defendant's Exhibit 13, both of which said letters were received by the said Frederick M. Hubbell.

"XLI. The plaintiff, the Union Land Company, is a foreign corporation, created under the laws of the state of Iowa. On the 23d day of July, 1908, and at all other times hereinafter mentioned, the said Frederick M. Hubbell was president of said the Union Land Company, and was the owner of more than a majority of its capital stock, and all but a very small percentage of said capital stock was owned by himself and his immediate family; the said stock was of little or no value, and the said the Union Land Company was controlled and dominated by the said Frederick M. Hubbell.

"XLII. On the 23d day of July, 1908, the said Frederick M. Hubbell attempted to transfer to the plaintiff the collateral set forth in the schedule attached to the said contract of August 4, 1906, referred to in finding of fact VIII. No consideration was given by the said the Union Land Company for said attempted transfer.

"XLIII. On or about the 4th day of August, 1908, the said mortgage upon the said Texas Railways Company, referred to in finding of fact I, was foreclosed. The said Frederick M. Hubbell attended the sale and bid upon the property at such foreclosure, but refused to bid at such sale up to an amount sufficient to satisfy even the liens ahead of the bonds covered by the said mortgage. The property was struck off for the sum of $286,000 to a certain Goodwin, acting for the aforesaid St. Louis Union Trust Company. At the time of the sale the indebtedness of the road, prior in lien to that of the aforesaid mortgage, amounted to $386,702.60.

"XLIV. On the 31st day of August, 1908, the said Frederick M. Hubbell attempted to transfer to the said the Union Land Company an interest in the said note of the Texas Railways Company, mentioned in finding of fact XXX, to the amount of $112,000, and also the underwriting agreements, including the agreement signed by the defendant, referred to in finding of fact XXXI. The said the Union Land Company gave no consideration for such transfer. No notice of such attempted transfer of the said underwriting agreements was given the defendant or to Jester & Co., and such transfer was a private transaction and not a public sale.

"XLV. No call for payment of all or any part of the balance of the defendant's subscription, under the said agreement, referred to in finding of fact XVIII, has ever been made by the said syndicate managers, and no such call could have been made by them upon the defendant on or after March 1, 1908, in an honest and reasonable exercise of the discretion conferred upon them by the said agreement.

"XLVI. Every recital in any of the exhibits in evidence, to the effect that the Texas Railways Company was the owner of upward of $409,000 of first mortgage 5 per cent. gold bonds of said Texas Southern Railway Company, or was possessed of an agreement for the purchase of upwards of $409,000 of said bonds, was untrue when made.

"XLVII. The said note and guaranty, referred to in finding of fact XXX, were never indorsed nor transferred to the plaintiff.

### "Conclusions of Law.

"I. The agreement of August 4, 1906, referred to in finding of fact VIII, was not an agreement for the purchase of $409,000 of the first mortgage 5 per cent. gold bonds of the said Texas Southern Railway Company, nor of any of them. No title, nor right to possession, to the said $409,000 of the said bonds, or to any of them, passed to Jester & Co., nor to its assignee, the Texas Railways Company, under the said agreement of August 4, 1906. The said

Texas Railways Company never entered into any agreement to purchase $409,-000 of the first mortgage 5 per cent. gold bonds of the Texas Southern Railway Company. The said Texas Railways Company never owned and never was entitled to possession of any of the first mortgage 5 per cent. gold bonds of the said Texas Southern Railway Company, deposited with the St. Louis Union Trust Company as depositary, under the plan and agreement of reorganization referred to in finding of fact III. The only first mortgage 5 per cent. gold bonds of the said Texas Southern Railway Company ever owned or possessed by the Texas Railways Company were $24,000 of the first mortgage 5 per cent. gold bonds of the Texas Southern Railway Company subsequently purchased of it from persons other than the said Frederick M. Hubbell, referred to in finding of fact VIII, which said bonds had never been deposited with the said St. Louis Union Trust Company, as depositary, subject to the terms and provisions of said plan and agreement of reorganization.

"II. Neither upon the 4th day of August, 1906, nor at any time thereafter, was the said Frederick M. Hubbell the owner of the bonds of the Texas Southern Railway Company, referred to in finding of fact IV, nor was he able to transfer the title to the same to Jester & Co., nor to Claude W. Jester, nor any one else. Neither on the 4th day of August, nor at any time thereafter, was the said Frederick M. Hubbell entitled to possession of the said bonds, nor was he able to transfer the possession of the same to the said Jester & Co., Claude W. Jester, nor to any one else.

"III. The payment of the sum of $625 by the defendant, referred to in finding of fact XIII, was made before the said agreement signed by the defendant, mentioned in finding of fact XVIII, became effective. It was received by said syndicate managers, and was to be applied as the first payment upon the aforesaid agreement, provided that upon said day of payment said agreement had become operative by virtue of fulfillment of all the conditions precedent to its taking effect. And the only purpose which said payment, or any other payments upon the said agreement, could be applied after November 1, 1906, provided the said agreement had taken effect upon that date as aforesaid, was that of acquiring for the joint account of the participants any or all of the said $225,000 of bonds of the Texas Railways Company, referred to in finding of fact XIV, as and when the same shall be issued by the said Texas Railways Company; but the managers were authorized to retain any money received from the defendant, or the other participants, upon the agreement until its termination, in the event that no bonds of the Texas Railways Company should be issued. The said syndicate managers were apprised by the terms of the agreement, at the time of the said payment, that it was made upon the aforesaid condition and for the aforesaid purpose, and no other.

"IV. The payment referred to in finding of fact XXIII, by the said Claude W. Jester to the said Frederick M. Hubbell on the 1st day of October, 1906, in St. Louis, Mo., of the sum of $625, given to the said syndicate managers by the defendant for the purpose and upon the condition mentioned in conclusion of law III, was never authorized by the defendant, nor by the terms of the said agreement signed by him, referred to in finding of fact XVIII, and the said payment by Claude W. Jester was a diversion from the purpose for which, and a violation of the condition upon which, said sum had been so given by the defendant, of all of which the said Frederick M. Hubbell had notice. The said Frederick M. Hubbell never acquired any title, nor right to possession, of the said $625 so paid by the defendant to the syndicate managers. The defendant has at all times since such unauthorized payment of the said $625 to the said Frederick M. Hubbell been and still is the owner of said $625. The said $625 at all times since the date of said payment has been and still is the property of the defendant.

"V. The attempted assignment by Jester & Co., as syndicate managers of the said syndicate agreement, signed by the defendant, referred to in finding of fact XVIII, and of the liability of the defendant thereunder, as security for the payment of the note of the Texas Railways Company for $175,000, payable to the order of the St. Louis Union Trust Company, as evidenced by Plaintiff's Exhibit D, referred to in finding of fact XXX, was never authorized by this defendant, nor by the terms of the said syndicate agreement signed by him, and was in excess of the powers conferred upon the syndicate managers

by said agreement, of all of which the St. Louis Union Trust Company, Hubbell, and the plaintiff at all times had full notice and knowledge; and the said attempted assignment had no binding force and effect whatsoever so as to create any liability in favor of the St. Louis Union Trust Company, or of Hubbell, or of the plaintiff as against this defendant.

"VI. The attempted guaranty by Jester & Co. as syndicate managers of the payment of the said note, as evidenced by Plaintiff's Exhibit D, referred to in finding of fact XXX, was never authorized by this defendant, nor by the terms of the said syndicate agreement signed by him, and was in excess of the powers conferred upon the syndicate managers by said agreement, of all of which the St. Louis Union Trust Company, Hubbell, and the plaintiff at all times had full notice and knowledge, and the said attempted guaranty had no binding force and effect whatsoever, so as to create any liability in favor of the St. Louis Union Trust Company, or of Hubbell, or of the plaintiff, as against this defendant.

"VII. The attempted transfer referred to in finding of fact XLIV, by Hubbell to the plaintiff on August 31, 1908, of the underwriting agreement signed by this defendant, referred to in finding of fact XVIII, and of the liability of this defendant thereunder, vested nothing whatsoever in the plaintiff, and was wholly unauthorized and beyond the power of Hubbell.

"VIII. The defendant on signing the said agreement, referred to in finding of fact XVIII, did not enter into an agreement to pay the sum of $4,000, or any sum whatsoever, in any event after March 1, 1908, upon said agreement. The only engagement entered into by the defendant was to pay the sum of $4,000 after March 1, 1908, in such amounts and at such times as should be required by call duly made. No liability for any further payment could arise until after such call. The attempted call upon the defendant for payment upon the said agreement signed by him, made by the attorneys for Hubbell by letter dated March 30, 1908, similar to Plaintiff's Exhibit Y, was ineffective for any purpose whatsoever, and imposed no liability upon this defendant of any kind. Neither Hubbell nor any one acting for him, was, under any circumstances, entitled to make any call or to make any demand prior to the maturity of the note. The plaintiff has failed to establish that liability for any further payment upon said agreement has been imposed upon or arisen as against the defendant.

"IX. None of the statements in any of the exhibits in evidence, to the effect that the Texas Railways Company was the owner of upwards of $400,000 of first mortgage 5 per cent. gold bonds of said Texas Southern Railway Company, or was possessed of an agreement for the purchase of upwards of $400,-000 of said bonds, estop the defendant from establishing their falsity in this action.

"X. The said words, 'effective Oct. 1, 1906,' inserted by Jester & Co. above the signature of the defendant to said syndicate agreement, as set forth in finding of fact XXI, do not estop the defendant from establishing that possession by the said Texas Railways Company of the assignment of the agreement of August 4, 1906, referred to in finding of fact XIII, was not a compliance with the recital in the said syndicate agreement, signed by the defendant, referred to in finding of fact XVIII, to the effect that the Texas Railways Company 'has or will have before this agreement becomes operative entered into an agreement to purchase $409,000 of the first mortgage 5 per cent. gold bonds of said Southern Company.' The said words, 'effective Oct. 1, 1906,' do not estop the defendant from establishing that the said agreement of August 4, 1906, referred to in finding of fact VIII, was not an agreement for the purchase of $409,000 of the aforesaid bonds. The said words 'effective Oct. 1, 1906,' do not estop the defendant from establishing in this action any of the defenses to a recovery by the plaintiff, referred to in conclusions of law I to VIII, inclusive.

"XI. Neither the knowledge of Jester & Co. nor of any of its members, estops the defendant from establishing in this action any of the defenses to a recovery by the plaintiff, referred to in conclusions of law I to VIII, inclusive.

"XII. The said St. Louis Union Trust Company took and held the said note of the Texas Railways Company, and the said instrument of guaranty and of assignment, referred to in finding of fact XXX, subject to all of the de-

fenses to any recovery thereon, referred to in conclusions of law I to VIII, inclusive.

"XIII. The said Frederick M. Hubbell was at all times chargeable with knowledge of all of the defenses, set forth in conclusions of law I to VIII, inclusive, to any recovery upon said note of the Texas Railways Company and said instrument of guaranty and of assignment, referred to in finding of fact XXX, and took and held the said instruments subject to said defenses.

"XIV. The plaintiff was and is chargeable with knowledge of all defenses, set forth in conclusions of law I to VIII, inclusive, to any recovery upon said note of the Texas Railways Company and said instrument of guaranty and of assignment, referred to in finding of fact XXX.

"XV. The guaranty of the note, referred to in finding of fact XXX, was never transferred to the plaintiff, except in so far as any interest in it passed by virtue of the attempted transfer to it of an interest of $112,000 in the said note, referred to in finding of fact XLIV.

"XVI. The attempted transfer of a part interest in the said note and guaranty, referred to in finding of fact XLIV, was not an assignment of the said note and guaranty for the purposes of collection.

"XVII. The defendant is entitled to judgment dismissing the complaint upon the merits.

"XVIII. The defendant is also entitled to recover from the plaintiff the taxable costs and disbursements of this action.

"Judgment is directed to be entered thereon accordingly.

"Dated, New York, June 3, 1912.

"Ernest Hall, Referee."

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Frank H. Platt, of New York City, for appellant.

Sol. M. Stroock, of New York City, for respondent.

SCOTT, J. The defendant is sued upon a syndicate or underwriting agreement, whereby he agreed, with others, to purchase bonds to be issued by a corporation known as the Texas Railways Company. The facts are practically undisputed, and are so fully stated by the referee in his report and opinion that it is unnecessary to restate them. We are entirely satisfied with the conclusion at which the referee has arrived, and with the reasons given by him for that conclusion. It would be unnecessary to go further, except that there is presented one point, not dealt with by the referee, which serves to fortify the result arrived at.

Defendant's liability is predicated in part upon the guaranty, by the managers of the syndicate, of a promissory note given by the Texas Railways Company to a trust company in St. Louis and the assignment of the underwriting agreement as collateral security for the note. The underwriting agreement signed by defendant provided as follows:

"The 'managers' are hereby granted specific authority to take up or guarantee the payment of any notes that may be issued by the Railways Company in payment or part payment for any or all of the aforementioned $409,000" of the bonds of the Southern Railroad.

The "managers" were designated in the first clause of the underwriting agreement as follows:

"This agreement between Claude W. Jester and Martin S. Watts, general partners, and George T. Jester special partner doing business under the firm

name and style of Jester & Co., in the city of New York (hereinafter called managers) parties of the first part," etc.

There can be no doubt, as we consider, that by the language above quoted it was the individual members of the firm of Jester & Co. who were made managers (a word that throughout the agreement is used in the plural form), and that the reference to their association as a firm was a mere descriptio personæ, intended to identify the individuals who were designated as managers. Greenwood Lake Co. v. N. Y. & G. L. Co., 134 N. Y. 435, 31 N. E. 874; Pfeiffer v. Rheinfrank, 2 App. Div. 574, 37 N. Y. Supp. 1076; Werner v. Wheeler, 142 App. Div. 358, 127 N. Y. Supp. 158. This being so, it was essential to the validity of any guaranty undertaken to be made by virtue of the authority given in the underwriting agreement that such guaranty should be signed by all the managers, and not by less than all or by the firm. In this respect the underwriting agreement resembled a power of attorney, as to which it is well settled that when it is given to two or more individuals it will, in the absence of a clear contrary intention, be presumed to be joint, and accordingly can be validly exercised only by all acting together. Unterborg v. Elder, 149 App. Div. 647, 134 N. Y. Supp. 242. The document by which Jester & Co. undertook to guarantee the payment of the note of the Texas Railways Company, and to assign to the trust company the underwriting agreement signed by defendant, was not signed by all the managers, but by only one of them, who added to his own name that of the firm. This was not a valid exercise of the authority given to the managers, and was wholly ineffective to create any liability against the defendant.

For this reason, as well as for those stated by the referee, the judgment is right, and must be affirmed, with costs. All concur.