THE GREENWOOD LAKE AND PORT JERVIS RAILROAD COMPANY, Appellant, *v.* THE NEW YORK AND GREENWOOD LAKE RAILROAD COMPANY, Respondent.

Where in a deed the word "trustee" is added to the name of the grantee, but there is no declaration of trust, and the conveyance is not to him as trustee, said word, in the absence of evidence other than the deed, may be regarded as merely *descriptio personæ.*

Where it appears that the grantee was a trustee, but the conveyance is to him and "to his successors and assigns" absolutely with no limitation

upon his power to convey and no disclosure of the object of the trust a grantee from him takes a good title.

In 1877 W. & B. conveyed to M., "trustee," a certain strip of land seventy-five feet wide "to be used only for railroad purposes." M. conveyed said land to H., "trustee," and he conveyed to T. None of the deeds disclosed any beneficiary of a trust, or contained any limitation upon the power to convey. W. & B. conveyed to an ice company land, including part of the strip subject to "a right of way through said premises seventy-five feet in width for railroad purposes." The ice company built an ice house on said land and laid a railroad track on said strip. In 1878 T. granted to said company the right to pass and repass railroad cars over said strip for the purpose of said ice business, the grant stating that "this license to use said railroad is not an exclusive one," and is only assignable " to the successors and assigns of said ice business and only for the purposes of said business." This right of way was the only means the ice company had of communication by land with defendant's railroad upon which it depended for transportation of ice to market and of supplies to its ice house. In 1880, said company conveyed all its property including its rights in said land to C. and H., who have since conducted the ice business on the premises. In 1886 T. conveyed said strip and his grantee conveyed to plaintiff. Defendant transported over the track laid on said strip ice and supplies for the ice house, changed the location and grade of the track somewhat and to some extent used it for purposes not connected with the ice business. In an action for trespass, *held*, that the grant of T. to the ice company was not simply a license, but conveyed an easement in said strip irrevocable without the consent of both parties or their successors; and running with the adjoining land of the grantee upon which the ice business was conducted, and for the benefit of which the grant was made; and that the action was not maintainable.

(Argued June 9, 1892; decided October 1, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 9, 1889, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Circuit without a jury.

This was an action to recover damages for a series of trespasses alleged to have been committed by the defendant upon part of a strip of land 3,920 long and seventy-five feet wide, known as a part of the Storms tract, situate in Orange county, on the west side of Greenwood lake.

Prior to March 17, 1877, the Storms tract belonged to

Weston & Burt, who on that day conveyed the strip in question, " to be used only for railroad purposes," to one " Michael A. Myers, trustee," who on the twenty-second of December following conveyed the same to " Henry H. Thorpe, trustee," and five days later Thorpe conveyed to William C. Traphagen. None of the deeds to or from said persons described as trustees disclosed any beneficiary of a trust, or contained any limitation upon the power to convey. May 3, 1886, said Traphagen conveyed the strip to William O. McDowell, who, on the tenth of September following, conveyed to the New England, New York and Pennsylvania Railroad Company, and May 21st, 1888, said railway company conveyed to the plaintiff. On March 20, 1877, said Weston & Burt conveyed to the Greenwood Lake Ice Company fifteen acres of the Storms tract, situate on the easterly side of the lake, subject, however, to the deed theretofore " given for a right of way through said premises, seventy-five feet in width, for railroad purposes." During the same year the ice company built an ice house on its said land, and a railroad track was laid on said strip. April 11, 1878, said Traphagen granted to the Greenwood Lake Ice Company a right of way over said strip for the purpose of its ice business, and on the 18th of July, 1880, the ice company conveyed all its said property, including its rights under the grant from Traphagen, to Cooper & Hewett, who have ever since conducted an ice business upon the said fifteen acres. The defendant transported ice and supplies for Cooper & Hewett over the railroad track on said strip; changed the location, curvature and grade of the track somewhat in order to improve it, and to some extent used said track for purposes not connected with the ice business of Cooper & Hewett.

The plaintiff, claiming that the grant from Traphagen to the ice company was a license, revocable at pleasure, assumed to revoke the same. This action was brought mainly to recover damages for entering upon said strip, and changing and using the track after such attempted revocation.

The plaintiff sought to recover for the alleged wrongful use of land during the period of its own ownership, and also during

that of its three immediate predecessors in title, who had assigned their rights to it.

The trial court dismissed the complaint upon the ground, among others, that the grant from Traphagen to the ice company was irrevocable, and the General Term affirmed upon the same grounds, one of the judges dissenting.

Further facts appear in the opinion.

*Charles S. Noyes* for appellant.

*Lewis E. Carr* for respondent.

VANN, J. The only evidence tending to show that either Myers or Thorpe was a "trustee" was the addition of that word to their names, respectively, in designating them as the respective grantees in the conveyances of March 17 and December 22, 1877. As there was no declaration of trust and no deed to either, "as trustee," the addition to the name of the party of the second part, in the absence of other evidence, might be regarded as merely *descriptio personæ.* (*Towar* v. *Hale,* 46 Barb. 34; *People* v. *Board of Stock Brokers,* 49 Hun, 349; affirmed 112 N. Y. 670.) But if either was a trustee, the conveyance to him "and to his successors and *assigns* forever," was absolute, with no limitation upon his power to convey and no disclosure of the nature or object of the trust. While he might be required to account for the proceeds in a proper proceeding and upon adequate proof, his grantees took a good title, which neither party to this action can question, as both claim under it. Mr. Traphagen, therefore, took the entire estate and during his ownership he granted a certain right in the land under consideration to the Greenwood Lake Ice Company. The nature of that right is the main question to be determined upon this appeal. The instrument by which the right was created was under the hand and seal of Mr. Traphagen and, after reciting his ownership of the strip of land in question, it proceeded as follows : " and whereas the Greenwood Lake Ice Company desire to use said

property as a way of ingress, egress and regress for themselves, their agents, servants and laborers over and upon which they may pass and repass railroad cars containing ice and materials for use in said ice business; now, therefore, in consideration of one dollar to me in hand paid, I do hereby grant to the said ice company and to their assigns and successors in said ice business the right to use said property for the purpose of a way of ingress, egress and regress over and upon which they may pass and repass railroad cars containing ice and materials, said supplies for use in said ice business, together with themselves, their employes and servants, but it is expressly understood that this license to use said railroad is not an exclusive right to the said company. And it is further agreed that the right hereby conveyed is not to be assigned by the said company except to the successors in and assigns of said ice business and only for the purpose of said business."

It is contended by the plaintiff that this was a license, revocable at the will of the grantor, or his assigns, and by the defendant, that it was an easement, irrevocable without the consent of both parties or their successors and that it ran with the adjoining land of the grantee, upon which its ice business was conducted, and for the benefit of which the grant was made. While the instrument creating the right is termed in the body thereof, a "license to use said railroad," this is not conclusive for the court must look at the nature of the right rather than to the name that the parties gave it, in order to learn its true character.

An easement is a right without profit, created by grant or prescription, which the owner of one estate may exercise in or over the estate of another for the benefit of the former. (Washburn Ease. 2; Goddard Ease. 2; 3 Kent's Com. 452; *Nellis* v. *Munson,* 108 N. Y. 453; *Pierce* v. *Keator,* 70 id. 419, 421; *Hills* v. *Miller,* 3 Paige, 254, 257; *Ritger* v. *Parker,* 8 Cush. 147; *Morrison* v. *Marquardt,* 24 Iowa, 35; *Big Mountain Imp. Co.'s Appeal,* 54 Penn. St. 361; *Hewlins* v. *Shippam,* 5 Barn. & C. 221; *Rowbotham* v. *Wilson,* 8 Ellis & B 123.)

A license is a personal, revocable and non-assignable privilege, conferred either by writing or parol, to do one or more acts upon land without possessing any interest therein. ( *Wiseman* v. *Lucksinger*, 84 N. Y. 31; *Mendenhall* v. *Klinck*, 51 id. 246; *Pierrepont* v. *Barnard*, 6 id. 279, 286; *Jackson* v. *Babcock*, 4 Johns. 418; *Mumford* v. *Whitney*, 15 Wend. 380; *Cook* v. *Stearns*, 11 Mass. 533; *Prince* v. *Case*, 10 Conn. 375; Washburn Ease. 6, 7; Goddard Ease. 3; 13 Am. & Eng. Encyc. 539.)

Although originally revocable at the will of the licensor, it may become irrevocable through the expenditure of money by the licensee. ( *Wiseman* v. *Lucksinger*, 84 N. Y. 31, 41; *Dempsey* v. *Kipp*, 61 id. 462; *Pierrepont* v. *Barnard*, 6 id. 279; *Risien* v. *Brown*, 10 S. W. Rep. 661; *Rogers* v. *Cox*, 96 Ind. 157; *Russell* v. *Hubbard*, 59 Ill. 335; *Morse* v. *Copeland*, 2 Gray, 302; *Drake* v. *Wells*, 11 Allen, 141.)

The right in question was created by deed, and is made assignable, because it runs to the " Ice Company and to their assigns and successors," with a limitation upon the power of assignment, restricting it " to the successors in and assigns of said ice business." It was without profit, as nothing was to be taken from the land of the grantor. It was not personal, because succession in title was provided for. Its nature indicates that the parties intended it to be a permanent interest in the land of the grantor, for it was a right of way over a railroad for the purpose of enabling a corporation to carry on a business requiring transportation upon an extensive scale. The business was of such a character that a revocable right might result in irreparable injury to the grantee. The express mention of successors and assigns of the business shows that the parties had in contemplation something more than a temporary expedient, or a merely revocable user. Moreover, the right of way was the only means of communication by land with the railroad upon which the ice company depended for the transportation of its ice to market, and of supplies to its ice house. The track was laid upon the strip of land leading to the railroad, the right to use it granted and the ice house built, all at

about the same time, and apparently for the same purpose, as there was no other use for the track. While it is true that no dominant estate is expressly named in the grant, yet one in fact existed and was named by implication. The grant was to an ice company, for use in its ice business, of the right to use a railroad track for the purpose of ingress and egress. Ingress to what and egress from what? Obviously, the adjoining land on which the ice company had constructed an ice house, and was conducting its ice business at the date of the grant, and to which it acquired title only three days after the original conveyance of the strip of land in question. All of the deeds were on record, and the creator of the right under consideration expressly mentions the ice business five times in the instrument creating it, thus showing that he knew of its existence, and contracted with reference to it as it was then conducted. The sole object of the grant was to benefit the ice business by giving it a right of way from its ice house to the railroad, and by necessary implication from the language used, under the circumstances surrounding the grantor when he used it, the term "ice business" was intended to designate the land where that business was carried on, as the land to be benefited by the grant. That land, therefore, was designed to be, and is indirectly referred to as, the dominant estate, or that to which the right belongs, while the servient estate, or that upon which the burden rests, is directly mentioned.

We think that the grant from Mr. Traphagen to the ice company, when construed with reference to what the parties had in contemplation, satisfies every element in the definition of an easement, and conflicts with nearly every element in the definition of a license.

After examining all of the exceptions to which our attention has been called, we find nothing that should reverse the judgment, which should therefore, be affirmed, with costs.

All concur.

Judgment affirmed.