10 N.Y.2d 320 (1961)
Senrow Concessions, Inc., Appellant,
v.
Shelton Properties, Inc., et al., Defendants, and Jules Mayer et al., Individually and as Copartners Doing Business under the Name of Shelton Building Co., et al., Respondents.
Court of Appeals of the State of New York.
Argued October 3, 1961.
Decided November 16, 1961.
Samuel A. Locker for appellant.
David H. Shapiro and Matthew Silverman for respondents.
Judges DYE, FULD and VAN VOORHIS concur with Judge BURKE; Judge FOSTER concurs for affirmance only as to the second cause of action; Chief Judge DESMOND dissents in an opinion in which Judge FROESSEL concurs and in which Judge FOSTER concurs for reversal as to the third cause of action only.
*323 BURKE, J.
The principal issue in this case involves the construction and effect of agreements between plaintiff-appellant, Proser Enterprises, Inc., and Shelton Properties, Inc.
In 1955 Shelton Properties, Inc., was the major lessee of the Hotel Shelton in Manhattan for a term to expire May 31, 1972. In January, 1955 it leased to Proser Enterprises, Inc., certain space to be used by Proser as a night club to be known as the La Vie Room. On February 14, 1955 Proser Enterprises, Inc., entered into an agreement giving plaintiff the exclusive right to operate concessionaire privileges in the night club, as follows: checkroom, toilet facilities, sale of cigars, cigarettes, flowers, novelties, photography of customers, soliciting of car parking and doorman services. The agreement provided that plaintiff was to lend Proser Enterprises $25,000 to be repaid by Proser from the rent paid by plaintiff to Proser for the concession privileges. The rental was to be 50% of the net profits that plaintiff earned from its concession. Proser assigned to plaintiff "all of the accounts charged at La Vie through the Diners' Club, New York City" and all of the accounts "not charged through the Diners' Club * * * arising out of the sale of *324 food, refreshments or merchandise which may be created while all or any part of the aforesaid loans remain unpaid" as collateral security for the loan. The leases of Shelton Properties, Inc., and Proser Enterprises, Inc., and the agreement with plaintiff were all to expire May 31, 1972. On February 18, 1955 Shelton Properties, Inc., signed an agreement providing that in the event that possession of the premises known as the La Vie Room should revert to it and said room should be leased or operated by Shelton Properties, Inc., as a night club or restaurant, plaintiff would have the same concession rights it had with Proser until the $25,000 loan was repaid in accordance with the agreement between plaintiff and Proser.
In January, 1956 Proser's lease was cancelled and terminated for nonpayment of rent and possession of the night club premises reverted to Shelton Properties, Inc. The plaintiff, following the reversion to Shelton Properties, Inc., made several demands upon Shelton Properties, Inc., to exercise its concession rights because of Shelton Properties' use of the premises for dancing and public functions, and wrote letters in December, 1956 and February, 1957; but Shelton Properties, Inc., refused to permit plaintiff to exercise any of its claimed concession rights.
On April 14, 1957 Shelton Properties, Inc., entered into a contract to sell its major lease for the unexpired term to Shelton Towers Corporation. Paragraph 29 of Schedule I of the contract adverted to plaintiff's claims by reason of the agreement of February 18, 1955 between plaintiff and Shelton Properties, Inc. Shelton Properties, Inc., agreed in that paragraph to indemnify the purchaser or its assigns against any liability to the plaintiff. The paragraph further provided that nothing contained therein should be deemed to be an intention to admit liability to the plaintiff or an assumption of the plaintiff's agreement by the purchaser. The ownership of the major lease and the operation of the hotel were transferred through numerous assignments up to the time of the bringing of this action.
Shelton Properties, Inc., had offered, prior to assignment of its lease, to negotiate a new arrangement with plaintiff by letter dated September 12, 1956 but there is no indication that plaintiff was interested. During the period when the premises were used by Shelton Properties, Inc., plaintiff did not institute any *325 action to enforce its rights under the agreement with Shelton Properties. It was not until the prime lease was sold and these same premises were leased by the new lessors to be used as an extremely profitable night club, Basin Street East, that plaintiff brought suit.
After answering, the respondents moved for summary judgment on the second, third and fourth causes of action. Plaintiff indicated in its opposing papers that it would discontinue the fourth cause of action. Summary judgment was denied at Special Term on the ground that there were triable issues of fact. On appeal the Appellate Division granted summary judgment as to the respondents.
Plaintiff contends that the agreement was not merely a license, but that it was also a lease and easement which ran with the land and was binding upon the assignees of Shelton Properties, Inc., since these assignees had notice of the agreements. It further contends that the respondents and Shelton Properties, Inc., had conspired to destroy the plaintiff's rights under the agreements, and that the attorneys were liable because "The overt act or acts of these attorneys in such conspiracy, is the legal advice given by the lawyers to their clients, which was known, or should have been known to such lawyers to be wrong, false, and incorrect".
It is clear that the agreement between appellant and Proser Enterprises, Inc., was a license for a concession and not a lease or easement. (See Layton v. Namm & Sons, 275 App. Div. 246, affd. 302 N.Y. 720.) Although it was a grant of an exclusive right to operate various concessions within the proposed establishment, such exclusive right is not a lease. (Hess v. Roberts, 124 App. Div. 328.) Not being a lessee, appellant was a licensee or concessionaire without interest in the realty. (People v. Horowitz, 309 N.Y. 426.) The fact that it loaned Proser Enterprises, Inc., $25,000, which was to be repaid in the form of credit for "rent" payments, and the fact that the "rent" was to be an equal share of the net proceeds of the concessions indicate that Senrow Concessions, Inc., was a coadventurer with Proser Enterprises, Inc., in the success or failure of the La Vie Room. Although it is true that Shelton Properties, Inc., in its agreement with appellant guaranteed the continuance of appellant's rights under its agreement with Proser as long as Shelton *326 Properties, Inc., had possession of the premises and leased or operated it as a night club, this subsequent agreement does not enlarge the legal rights of appellant under the agreement with Proser. It bound only Shelton Properties, Inc., which is not a party to this appeal. Having a mere license or concession under the Proser agreement, Senrow Concessions, Inc., has no more than a license or concession as a result of its agreement with Shelton Properties, Inc. "A license is not an interest or estate in the land corporeal or incorporeal." (Walsh, Law of Property [2d ed., 1935], p. 699.) Not being such an interest or estate, it does not bind the successors in interest of the prime tenant who were not parties to the agreement. The fact that these successors had actual knowledge of the agreement is not material, since the agreement did not attach itself to the lease by operation of law and the assignees specifically disavowed any liability under the agreement.
Conceding arguendo appellant's contention that it has stated a cause of action for prima facie tort for inducing a breach of contract, its affidavit does not state any facts supporting this contention; it only contains conclusions. There is, what is most important, no showing of any fraudulent connection between these parties prior to the breach of the contract by Shelton Properties, Inc., in 1956. Obviously the respondents, in the absence of such facts, cannot be held to be co-conspirators in a breach of contract which had occurred prior to the time they began negotiations to acquire the prime lease.
Although the process of summary judgment may seem to some to be a harsh remedy, the effective administration of justice requires its timely dispensing. A trial may be desirable in every case, but the practicalities of frivolous litigation and court congestion mandate a summary procedure upon the ascertaining that there is no cause of action. "The fear of depriving a party of his day in court because he says, in his affidavit, things that, if true, would present a question of fact, should not permit him to evade the actualities by merely making these statements." (Paston, Summary Judgment in New York [1960 Cum. Supp.], p. xviii.)
Accordingly, the judgments of the Appellate Division should be affirmed, with costs.
*327 Chief Judge DESMOND (dissenting).
The Appellate Division, reversing Special Term, has granted motions made by some of the defendants for summary judgment dismissing the complaint as to those defendants. There are four counts in the complaint. Since the first numbered one runs against nonmoving defendant Shelton Properties, Inc., only and since plaintiff has abandoned its fourth cause of action, our inquiry on this appeal is as to the second and third counts only.
Briefly summarized for present purposes, those two causes of action make these allegations: that in 1955 nonmoving defendant Shelton Properties, Inc., was the lessee of the Shelton Hotel in Manhattan under a lease running until 1972, that nonmoving defendant Proser Enterprises, Inc., had a sublease for night club use of part of the hotel building, that plaintiff made agreements (or one tripartite agreement) with Shelton and Proser whereby plaintiff loaned or advanced $25,000 to Proser to decorate and furnish the night club premises and Proser gave plaintiff a 17-year lease or license or concession (more about this hereafter) to run a cloakroom, restrooms, a photographic darkroom and clothing checkroom and a photography service and other services in the night club and to sell various articles there, and Proser agreed to repay plaintiff its $25,000 from the rent to be paid by the latter for the lease or concession, which rent was to be 50% of plaintiff's net profits. Defendant Shelton Properties, Inc., lessee of the hotel building which included the night club location, agreed on its part that, if for any reason the night club premises sublet to Proser Enterprises, Inc., should revert to the major lessee Shelton Properties, Inc., and should later be "leased or operated" as a night club or restaurant, plaintiff should continue to enjoy in the successor night club or restaurant the same "rights and privileges" as had been granted to it by Proser Enterprises, Inc., "until the balance of the loan of $25,000.00, still due, is paid as set forth in the agreement". Respondents in their papers assert that this promise of continuation of plaintiff's rights in the event of reversion of the night club premises to Shelton Properties, Inc., was to be available in the event only that Shelton Properties, Inc., should itself then operate a night club or restaurant in that part of the building. Such a construction of the promise of Shelton Properties, Inc., is impossible. Its letter of February 18, 1955 contains two *328 separate paragraphs on the subject, one promising a continuation of plaintiff's rights and privileges if the major lessee should itself operate a night club or restaurant, the other promising the same protection of plaintiff's position if after reverting to Shelton Properties, Inc., the premises should be "leased or operated" as a night club or restaurant  that is by someone other than Shelton Properties, Inc.
In February, 1955 Proser Enterprises, Inc., after using plaintiff's $25,000 for decor, furnishings, etc., set up the night club, and plaintiff took over and operated therein the rooms and services contracted to it. In October, 1955, however, Proser Enterprises, Inc., abandoned the premises and closed the night club. In January, 1956 the Proser sublease was cancelled by Shelton Properties, Inc., because of Proser's nonpayment of rent. Plaintiff was thereafter excluded from the premises and, although the night club rooms were afterwards used by Shelton Properties, Inc., as a banquet room, etc., and are now used by some of the defendants as a night club, plaintiff despite repeated demands made on all concerned has not been allowed to resume its business activities therein.
Though the ultimate questions here are narrow ones, the pleadings, affidavits and briefs are long and complicated. It will be worthwhile, therefore, before summarizing those allegations of the complaint which directly attack respondents, to eliminate at least one area of confusion. Respondents present the case as if the only real question was as to whether plaintiff got from Proser Enterprises, Inc., a lease or a mere license. Plaintiff's rights, they say, were merely as Proser's licensee and, therefore, the respective defendants-respondents in taking over (as we shall see) the hotel building, including the night club premises, were under no duty to plaintiff and were not required to "assume" Proser's obligation to plaintiff (see Panama Realty Co. v. City of New York, 158 App. Div. 726). This was so, they argue, even though they knew of the "license" agreement and knew, too, of the promise of Shelton Properties, Inc., to protect plaintiff's rights and privileges if the Proser sublease should end and the night club should later be operated by others. As we see it, this is only part of the problem. Plaintiff's primary position is that it got from Proser not a mere concession or privilege to conduct a business or businesses in *329 the night club but a true lease of parts of the night club premises, including the specially built photographic darkroom and that it got, also, an easement from Proser to use other parts of those premises for the other parts of plaintiff's business. Respondents, asserts plaintiff, took subject to that leasehold and that easement. But plaintiff does not rely on that alone. In addition, it alleges that, regardless of "lease" or "license" or "easement", defendants-respondents were guilty of tortious conduct toward plaintiff in inducing the major lessee to breach its agreement with plaintiff and in conspiring among themselves and with the major lessee to defeat plaintiff's rights. In our opinion, the complaint sufficiently alleges facts to support each of those theories and summary judgment should have been denied since defendants failed to make a factual showing that there was no merit to either of plaintiff's theories (Rules Civ. Prac., rule 113, subd. 2). Indeed, respondents' moving affidavits do no more than set out the tripartite agreement, the chronology of respondents' acquisitions of interests in the realty and bare denials that respondents wrongfully interfered with or induced the destruction of plaintiff's contractual rights. Since plaintiff, as we shall show, has two soundly arguable theories for recovery, the case is not one for summary judgment.
After this digression, we now take up the second and third counts of the complaint as against these respondents. Reading these with other allegations in the affidavits on this motion, we learn that in April and June, 1957, nonmoving defendant Shelton Towers Corporation got from the afore-mentioned major lessee Shelton Properties, Inc., an agreement whereby the latter would sell and transfer the major lease to the former, that the interest of Shelton Properties, Inc., in that agreement just mentioned passed to defendant-respondent Faygat Realty Corp., controlled by individual defendants-respondents Mayer, Greer, Wells and Wells, to whom Faygat then transferred its interest in the agreement with Shelton Properties, Inc., that the latter then conveyed the major lease itself to nonrespondent defendant Shelton Towers Corporation which transferred the major lease of the hotel building to individual defendants-respondents Wells et al., who in turn sublet the hotel to nonrespondent defendants Bressler, Glass and Luxemburg (known as "Shelton Tower Associates") and defendant Shelton Towers Corporation *330 began operation, continuing to do so until July, 1959 when they were dispossessed. In the latter month, it is alleged, the so-called "Wells Group" with or through defendant-respondent S. T. Hotel Corp. took over the hotel operation and in December, 1959 nonrespondent defendant Shelton East Corporation, with which the "Wells Group" had some association, conducted the hotel business until December, 1959 when a leasehold interest in the hotel property passed to defendant Shelton East Corporation. It is alleged that defendants-respondents Robinson, Silverman, Pearce and Aronsohn, who are attorneys and law partners, acting with the "Wells Group" and through defendant S. T. Hotel Corp. as the dummy or alter ego of the individuals, actually operated the hotel during part of these periods. The complaint asserts that this somewhat bewildering series of agreements, assignments and conveyances, somewhere in the course of which a new night club was opened and is being successfully run by respondents or some of them, was actually the carrying out of a scheme by the "Wells Group" and their attorneys (one of whom is said to have had a financial participation in the hotel operation) to conceal their control and management of the property and to effect or simulate a break in the transfer of such management and control from the "Wells Group" to their creatures Shelton East Corporation and S. T. Hotel Corp., all for the purpose of destroying plaintiff's interest in the tripartite agreement of February, 1955. It is undisputed, as we read the record, that all the defendants knew of the tripartite agreement and its terms. Indeed, the April, 1957 agreement whereby Shelton Properties, Inc., contracted to sell the major lease to Shelton Towers Corporation referred to the February, 1955 letter of agreement between Shelton Properties, Inc., and plaintiff, and mentioned possible claims by plaintiff thereunder for the payment of which Shelton Towers Corporation refused to assume liability.
The first question is: did plaintiff's agreement with Proser constitute a lease? The words "license" and "licensee" are used therein and the word "lease" is not, but even a document which calls itself a "license" may be in law a lease of real property if it grants a right to use and occupy land (Greenwood Lake & Port Jervis R. R. Co. v. New York & Greenwood Lake R. R. Co., 134 N.Y. 435). A license, strictly speaking, is no more *331 than a personal privilege to do certain acts on the land of another without possessing any interest or estate in the land (53 C. J. S., Licenses, § 79; Reynolds v. Van Beuren, 155 N.Y. 120, 123). But the difference is a subtle one and here, as in many other cases, it is difficult to determine which we have. Among other things, this document contains a promise that space will be made available to the "licensee" for a darkroom and a coatroom. The affidavits show that such space was furnished and plaintiff's treasurer swears that those parts of the premises were under plaintiff's complete control and were occupied and used by it only. On a trial of the action it may turn out that plaintiff was merely licensed to operate a concession and did not acquire the status of a subtenant and if so plaintiff will be unable to succeed on his first theory (Hess v. Roberts, 124 App. Div. 328). But it would be unfair and unsafe to come to so drastic a conclusion without a full exploration of the facts including the intent of the parties. As to intent, plaintiff submitted an affidavit by the president of Proser Enterprises, Inc., who swears that plaintiff paid the cost of building a hat checkroom and darkroom at agreed places on the premises, that plaintiff had the exclusive possession and control of those rooms, that plaintiff kept its property there and excluded therefrom all persons except plaintiff's employees, that deponent considered the agreement with plaintiff to be a lease as well as a license and concession agreement and that both the Proser corporation and the over-landlord Shelton Properties, Inc., regarded and talked of the agreement as a lease.
Such decisions as Layton v. Namm & Sons (302 N.Y. 720), People v. Horowitz (309 N.Y. 426) and Kaypar Corp. v. Fosterport Realty Corp. (272 App. Div. 878, motion for leave to appeal den. 297 N.Y. 1036) are not controlling of this question of "lease" or "license" since in each of those cases the question was whether the parties were in landlord-tenant relationships within the meaning of certain statutes.
There is a subsidiary question as to whether plaintiff, authorized by its agreement with Proser to use other parts of the night club in carrying on other parts of its concession business, thereby acquired an easement (see Clark v. Devoe, 124 N.Y. 120).
*332 The second  and independent  theory of recovery advanced by plaintiff is that respondents conspired to and did deprive plaintiff of its contractual rights and that defendants (except Shelton Properties, Inc.) wrongfully induced Shelton to breach the plain, well-known contract whereby it had promised to see to it that in any new night club plaintiff's rights would be continued. It is settled law in New York that one who with knowledge of an existing contract intentionally induces one of the contractors to refuse to perform, to the injury of the other, is liable for the damages of the latter (Israel v. Wood Dolson Co., 1 N Y 2d 116, 120, and cases cited therein). It follows that several persons who combine to carry out such a purpose, and do carry it out, are all liable. It is no answer that some of the defendants are lawyers or that Shelton Properties, Inc., had already breached its contract with plaintiff before respondents came into the picture. Part of the alleged breach, or one step in it, may have been the turning of the hotel over to some of the respondents by Shelton Properties, Inc., without provision for plaintiff. Under this complaint it would be open to plaintiff to prove if it could that this transfer and the later transfers were parts of a plan to destroy plaintiff's contractual rights. It is of no consequence whether this theory of action be labeled "inducement of breach" or "prima facie tort".
The judgments should be reversed and the motion for summary judgment denied, with costs.
Judgments affirmed.