In the Matter of REALTY TRADE CORP., Petitioner, *v.* CITY RENT AND REHABILITATION ADMINISTRATION, Respondent.

Supreme Court, Special Term, New York County, November 1, 1966.

*McLaughlin, Fougner & Messing* (*William L. Messing* of counsel), for petitioner. *Maurice A. Reichman* for respondent.

GEORGE POSTEL, J. This is an application pursuant to CPLR article 78 for an order annulling the determination of the respondent New York City Rent Administrator which reduced

the rents on two apartments in petitioner's luxury apartment house. Respondent reduced the rents in the subject premises for the alleged diminution of "essential services" provided to two tenants. These tenants complained of being deprived of access to the roof of the building which they had been using for sunbathing. At issue, in the first instance, is whether the use of roof area was an essential service the denial of which resulted in a diminution of the value of the subject premises. "The question of what constitutes an essential service is a factual one to be determined by the Rent Administrator. (*Matter of Alas Realty Corp.* v. *Abrams,* 3 A D 2d 842 [2d Dept., 1957])." (*Matter of Stratford Leasing Corp.* v. *Gabel,* 17 A D 2d 332, 333.) Similarly, the question of what services were provided to tenants prior to April 30, 1962, the date at which maximum rents were fixed, is one of fact for the Administrator's determination. (New York City Rent, Eviction and Rehabilitation Regulations, §§ 22, 34.2). Where there is a rational basis in fact and in law for the determination, the judicial function is exhausted. (*Matter of Mounting & Finishing Co.* v. *McGoldrick,* 294 N. Y. 104; *Matter of First Terrace Gardens* v. *McGoldrick,* 1 N Y 2d 1). The court may not substitute its judgment for that of the Administrator. (*Matter of Friedman* v. *Weaver,* 3 N Y 2d 123.)

The record substantially shows that the only tenants in the building who made claim to use of the roof were the two tenants involved herein. At most their use was a license subject to being revoked at any time by the landlord. It was a mere license afforded them by the managing agent of the premises. The written leases of the two tenants in no way granted them use of the roof. The record is uncontradicted that since 1943, when the registrations of the two units of the tenants involved were had, these units were not listed as having the service which tenants now claim landlord was required to furnish. At no time in the registration of the premises, and, particularly, the apartments of the two tenants involved herein, was there any listing of the roof as a service which the landlord was required to furnish the tenants. On the contrary, there is ample evidence in the record by tenants of the penthouse that the roof was exclusively for the use of the penthouse. The very size of the roof area negated any argument or assumption by the tenants that the roof was to be used customarily for all tenants. The physical setup of the roof showed that a dangerous condition would ensue if it were to be left open to the use of all tenants or even the two tenants involved, since physical access to the area in question was through a fire exit — a totally

inadequate means of ingress and egress if the tenants' contentions were accepted. All the facts and circumstances and evidence in the record itself compel the finding that the tenants in the building did not have the use of the roof nor does the record support the two tenants' contentions that as to them they had a right to the roof for themselves as an essential service.

In the circumstances here, the respondent's determination that the use of the roof was an "essential service", under the regulations, I find to be arbitrary, capricious or unreasonable. Accordingly, the application is granted.