(April 12, 2005)

■ PETER S. KOHMAN, Respondent-Appellant, v ROCHAMBEAU REALTY & DEVELOPMENT CORP., Appellant-Respondent. [792 NYS2d 458]—

Order, Supreme Court, New York County (Marilyn Shafer, J.), entered April 15, 2003, which denied plaintiff's motion and defendant's cross motion for summary judgment, affirmed, without costs.

Plaintiff has been a residential tenant in the ground-floor apartment at 23 West 89th Street in Manhattan since he took occupancy of the apartment with his mother, the original lessee, pursuant to a lease dated July 1, 1971. After his mother died in July 1998, plaintiff came into possession of the rent-regulated premises as her successor. Defendant has been the owner of the building since 1988.

The lease describes the premises as "the apartment known as Apartment Garden Floor Through on the Ground floor." Plaintiff avers that the apartment has always included the yard at the rear and side of the building, that he and his family have had exclusive use and control of the yard since the inception of their tenancy, that neither defendant nor any of its predecessors ever asserted any right to the use of the yard or maintained or cared for it until the events that led to this lawsuit, and that, until July 2002, when defendant constructed a stairwell from the basement to the yard, the only means of access to the yard was through his apartment.

Defendant argues that the lease does not indicate that the rear yard is part of the leasehold, and contends that plaintiff's use of the yard was granted by license that could be revoked at any time. Indeed, by letter dated July 31, 2002, defendant advised plaintiff that his "license to use and occupy the rear yard at the building located at 23 West 89th Street, New York, NY has now been revoked," and that plaintiff was "no longer allowed to enter into or use the rear yard and must refrain from any and all use of the rear yard."

Plaintiff argues that if the yard, or garden, had not been included in the leased premises, the apartment would have been described simply as "the ground floor apartment," there being only one ground floor apartment in the building. Defendant argues that the word "garden" in the description of the leased premises merely describes the location of the apartment within the building.

The motion court correctly found that each party's interpretation of the key words, "Apartment Garden Floor Through on the Ground floor," was reasonable and properly denied summary judgment to both parties on the ground that the lease provision is ambiguous and the intent of the parties must be resolved at trial from disputed evidence or from inferences outside the written words (*see Time Warner Entertainment Co. v Brustowsky*, 221 AD2d 268 [1995]).

We note, in addition, that defendant's argument that plaintiff's use of the yard is consistent with the concept of a revocable license supports the determination that the lease is ambigu-

ous. "A license is a personal, revocable and non-assignable privilege, conferred either by writing or parol, to do one or more acts upon land without possessing any interest therein" (*Greenwood Lake & Port Jervis R.R. Co. v New York & Greenwood Lake R.R. Co.*, 134 NY 435, 440 [1892]). The lease itself provides that "no rights, easements or licenses are acquired by Tenant by implication or otherwise *except as expressly set forth in the provisions of this lease*" (emphasis added), and defendant does not identify the source of the license as something other than the lease. Concur—Buckley, P.J., Ellerin and Williams, JJ.

Andrias and Sullivan, JJ., dissent in a memorandum by Sullivan, J., as follows: Plaintiff is the rent-regulated, residential tenant of a ground floor apartment in a converted five-story rowhouse owned by defendant. Plaintiff has resided in this apartment since June 1971, when, at age 11, he moved there with his mother, who rented the apartment pursuant to a two-year lease commencing July 1, 1971. When his mother died in July 1998, plaintiff succeeded to her rent stabilized tenancy.

On July 31, 2002, defendant mailed plaintiff a letter notifying him that his license to use the rear yard at the premises "has now been revoked." Plaintiff did not cease his use of the yard but, instead, commenced this action for declaratory and injunctive relief barring the owner from interfering with his quiet use and enjoyment of the rear yard. After joinder of issue, plaintiff moved for summary judgment granting him the relief sought in the complaint, annexing to his supporting affidavit the original July 1, 1971 lease and the owner's July 31, 2002 notice. Defendant cross-moved for summary judgment, asserting that the yard was not part of the leasehold and that plaintiff's use of the yard was by grant of a license, which was revocable. Supreme Court denied both motions, finding ambiguity in the lease with respect to the parties' intent as to the rear yard. Finding no ambiguity in the lease, I would award summary judgment to the landlord.

According to the relevant language of the original lease between defendant's predecessor and plaintiff's mother, dated June 30, 1971, the "Landlord . . . leases to Tenant and Tenant . . . hires from Landlord, the apartment known as Apartment Garden Floor Through on the Ground floor, in the building known as 23 West 89th Street." The lease does not contain any provision that explicitly or implicitly mentions rear yard or rear garden. Paragraph 18 of the lease states that the "Landlord or Landlord's agents have made no representations or promises with respect to the said building, the land upon which it is erected or demised premises except as herein expressly set forth

and no rights, easements or licenses are acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this lease." Plaintiff's sole argument is that the description of the location of the subject apartment within the apartment building constitutes a lease of the building's rear yard or rear garden.

In his affidavit, plaintiff asserts that the rear garden/yard was used exclusively by his family from the day they took occupancy. He claims they maintained, planted and tended it. Neither the present owner nor his predecessors has ever asserted a right to the yard, he argues, nor have they performed any maintenance, except for a repair to a wall, until the events leading to this litigation. He states that there was never any means of access to the yard except through his apartment until the current owner, who took title in 1988, constructed a stairway from the yard to the basement in July 2002.

In his supporting affidavit, defendant's president, Andrew La Sala, points out that the rear yard is not a garden but, as the record shows, a concrete slab. The only garden at the premises is located in the front of the building. Thus, he notes, the lease describes the demised premises as "the apartment known as Apartment Garden Floor Through on the Ground floor." In addition, he emphasizes that the description is "Garden Floor Through" rather than "Floor Through to Garden." La Sala further notes that the subject apartment had never been the only means of access to the rear yard. Although previously in disrepair, there had been a means of ingress and egress from the basement to the backyard (according to plaintiff, a boarded-up opening in the foundation, which, when opened, revealed a 10-foot hole).

If a written agreement is straightforward and unambiguous, the interpretation of the agreement presents a question of law for the court to decide without resort to extrinsic evidence (*Hartford Acc. & Indem. Co. v Wesolowski,* 33 NY2d 169, 171-172 [1973]; *350 E. 30th Parking v Board of Mgrs. of 350 Condominium,* 280 AD2d 284, 287 [2001]). A contract must be interpreted in accordance with the intention of the parties and where their intention is unequivocally set forth in the agreement, the language used controls (*Matter of Wallace v 600 Partners Co.,* 86 NY2d 543, 548 [1995]). The words must be accorded their "fair and reasonable meaning" (*Sutton v East Riv. Sav. Bank,* 55 NY2d 550, 555 [1982]). It should be noted that, even if the parties' intent did present an issue of fact, the only witnesses who could possibly testify to their intent, the original parties, are dead or, apparently, no longer available.

Reading the language of the lease, it is clear that there was no agreement to lease the rear yard to plaintiff's mother. According to the original lease, the landlord leased to the tenant "the apartment known as Apartment Garden Floor Through on the Ground floor, in the building known as 23 West 89th Street." As the lease language clearly states, the lease is limited to "the apartment . . . in the building"; it does not extend to the rear yard space as well. The words "Garden Floor Through" do not denote the demise of the backyard, but are merely descriptive terms used to define space within the building being rented. The apartment is located at the "Garden Floor" level on the ground floor "in the building known as 23 West 89th Street" and the apartment occupies the entirety of the ground floor, known as the "Floor Through" apartment. As noted, there is a garden in front of the building on the same level as plaintiff's apartment.

Moreover, the lease does not describe the apartment as a "garden apartment." And even if it did, it would not denote the demise of an exclusive use of a garden; rather, a "garden apartment" is defined as "a multiple-unit low-rise dwelling having considerable lawn or garden space" (Merriam-Webster Collegiate Dictionary 480 [10th ed 1997]). Had the parties intended to rent the backyard to one tenant alone, the lease would have employed more specific language, such as "including the backyard."

The only right plaintiff had to use the rear yard was by license or sufferance (see e.g. *Vaughan v Transit Dev. Co.*, 222 NY 79 [1917]; *Smith v Smythe*, 197 NY 457, 462 [1910]; *Bennett v City of Mount Vernon*, 243 App Div 119 [1934]).* If a building owner allows a tenant to use a portion of the owner's property that is not part of the lease, such use is recognized as a license (see *Matter of Realty Trade Corp. v City Rent & Rehabilitation Admin.*, 52 Misc 2d 318 [1966]). A license with respect to the use and occupancy of the grantor's premises is cancelable at will and without cause (*Jossel v Filicori*, 235 AD2d 205, 206 [1997]; *American Jewish Theatre v Roundabout Theatre Co.*, 203 AD2d 155, 156 [1994]). That the landlord may have acquiesced in the use of the backyard by plaintiff's family does not create a right since "[t]he law does not . . . penalize good nature or indifference nor does permission ripen into right" (*Ancess v Trebuhs Realty Co.*, 18 AD2d 118, 119 [1963], *affd* 16 NY2d 1031 [1965]).

---

* Despite the majority's statement that a license is conferred either by writing or parol (see *Greenwood Lake & Port Jervis R.R. Co. v New York & Greenwood Lake R.R. Co.*, 134 NY 435, 440 [1892]), a license may also be acquired by implication (*Rosenstiel v Rosenstiel*, 20 AD2d 71, 76 [1963]).

In arguing that the lease is ambiguous, the majority refers to the provision of the "No Representations by Landlord" paragraph, which states that "no rights, easements or licenses are acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this lease." This provision is part of a standard merger clause (*see e.g. Barash v Pennsylvania Term. Real Estate Corp.,* 26 NY2d 77, 81 [1970]), the purpose of which is to bar the introduction of extrinsic evidence to vary the terms of the agreement and to require that the intent of the parties be gleaned from the writing itself (*see Matter of Primex Intl. Corp. v Wal-Mart Stores,* 89 NY2d 594, 599 [1997]; *Mennen v J.P. Morgan & Co.,* 91 NY2d 13, 28 [1997]). Thus, the provision is intended as a shield to protect the landlord against the assertion of oral promises, not a sword to be used against him in the guise of creating an ambiguity.

Plaintiff argues, alternatively, that his use of the backyard is a "required service" (*see* Rent Stabilization Code [9 NYCRR] § 2520.6 [r]; § 2201.2). In the cases cited by plaintiff, none of which has a fact pattern similar to the one here, the tenant sought to enforce services already determined by the Division of Housing and Community Renewal (DHCR) to be building-wide required services (*see e.g. Matter of Netherland Operating Corp. v Eimicke,* 135 AD2d 352 [1987], *lv denied* 71 NY2d 802 [1988]; *Matter of State Lafayette Co. v Division of Hous. & Community Renewal,* 306 AD2d 414 [2003]; *McMickens v Royal,* NYLJ, May 30, 1991, at 21, col 3). Here, there has been no such determination. For instance, in *Matter of Netherland Operating Corp.,* this Court merely upheld a DHCR determination that use of a garage was a required service. In this case, as noted, there has been no determination that the use of the backyard is a service, much less that it is a required service. Similarly, in *Matter of State Lafayette Co.,* the Second Department affirmed a judgment upholding DHCR's determination that the building-wide service of an outdoor swimming pool could not be modified. On the other hand, in *Jossel v Filicori* (235 AD2d 205 [1997], *supra*), as here, the exterior terrace that the tenant had used over the years was not included in the lease as part of the demised premises. The Court held that the tenant's use of the outdoor space was, at best, by license revocable at will.

Plaintiff's other alternative argument, that the use of the backyard constituted an easement by estoppel, is similarly unpersuasive since he has failed to point to any representations by the landlord upon which he reasonably relied to his detriment, which would estop the landlord from denying an easement in his favor (*see U.S. Cablevision Corp. v Theodoreu,* 192

AD2d 835, 838-839 [1993]). Here, plaintiff has not made any valuable improvements in the backyard. His planting in the yard, which the landlord insists, without refutation, was in a planter, does not support the argument that it would be inequitable to interrupt the enjoyment of the backyard space (*see Olin v Kingsbury*, 181 App Div 348 [1918]).

Accordingly, I would modify the order on appeal to grant the cross motion for summary judgment and declare that plaintiff had a mere license to the use of the backyard that defendant properly revoked.