■ PROSPECT OWNERS CORP., Respondent, v GLORIA SANDMEYER et al., Appellants. [881 NYS2d 40]—

Order, Supreme Court, New York County (Edward H. Lehner, J.), entered December 26, 2007, which, inter alia, after a nonjury trial, declared that defendants' use of the south side of the lower roof of the building in which they are tenants was pursuant to a revocable license, unanimously affirmed, without costs.

The trial court correctly found that defendants' right to the use of the roof space adjacent to the 22nd floor portion of their duplex apartment (the south roof) was not, as they contend, governed by their lease, which did not include the south roof in the demised premises, but was pursuant to a license. "Whereas a license connotes use or occupancy of the grantor's premises, a lease grants exclusive possession of designated space to a tenant, subject to rights specifically reserved by the lessor" (*American Jewish Theatre v Roundabout Theatre Co.*, 203 AD2d 155, 156 [1994]). The trial evidence established that defendants' use of the south roof has not been exclusive. Plaintiff, through its agents, has had access to the south roof throughout the years to perform routine maintenance, make roof repairs, gain access to elevator shafts, clean drains, and repair, paint, and maintain the "Tudor City" sign located on the roof. Similarly, the restaurant located on the ground floor of the building has had regular access to the area of the south roof in which its machinery is stored. Both enter the south roof space without defendants' consent. While plaintiff indeed permitted defendants to use the space, its acquiescence did not create a right in them (*see Ancess v Trebuhs Realty Co.*, 18 AD2d 118, 119 [1963], *affd* 16 NY2d 1031 [1965]) but was revocable at will (*see Jossel v Filicori*, 235 AD2d 205, 206 [1997]; *American Jewish Theatre*, 203 AD2d at 156; *Matter of Realty Trade Corp. v City Rent & Rehabilitation Admin.*, 52 Misc 2d 318 [1966]).

Defendants contend that extrinsic evidence of a 48-year course of conduct, including their use of the south roof to the exclusion of all other tenants for a variety of uses continuously throughout that period, plaintiff's failure ever to expressly tell them not to use the space and its alleged acknowledgment and implicit approval of their use thereof, establishes that the parties intended that the demised premises include the south roof from the inception of the lease. However, since the lease and the renewal leases make no reference to defendants' right to use that space, there is no ambiguity as to whether the space is included in the leased premises (*Matter of Davis v Dinkins*, 206 AD2d 365, 366-367 [1994], *lv denied* 85 NY2d 804 [1995]), and extrinsic evidence may not be considered (*South Rd. Assoc., LLC v International*

*Bus. Machs. Corp.*, 4 NY3d 272, 278 [2005]; *see also Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004]). In any event, given the evidence that the only direct access to the south roof from the apartment is through a window, while the upper terrace is accessible through a door and is undisputedly part of the leased premises, that the co-op conversion offering plan made no reference to the south roof in connection with defendants' apartment, while the upper terrace was expressly included in the shares allotted to that apartment, and that the corresponding roof area that abuts the apartment on the north end of the building is undisputedly a public area, the only reasonable conclusion is that the parties did not intend the south roof to be included in the leased premises.

The south roof is not an appurtenance to defendants' apartment that may be revoked only at the termination of the lease, since its use is neither essential nor reasonably necessary to defendants' full beneficial use and enjoyment of the apartment (*see Blenheim LLC v Il Posto LLC*, 14 Misc 3d 735, 740 [2006], citing 1 Dolan, Rasch's Landlord and Tenant—Summary Proceedings § 7:5 [4th ed]). Defendants use the south roof primarily for recreational and storage purposes, for which there exist alternative premises (*see id.* at 741; *Oberfest v 300 W. End Ave. Assoc.*, 34 Misc 2d 963, 965 [1962]; *Mammy's Inc. & Pappy's Inc. v All Continent Corp.*, 106 NYS2d 635 [1951]).

Nor have defendants acquired the right to exclusive use of the south roof through adverse possession, since they have had an ongoing landlord-tenant relationship with plaintiff or its predecessors since 1952 (*see* RPAPL 531; CPLR 212 [a]; *Ley v Innis*, 149 AD2d 366 [1989], *lv dismissed* 74 NY2d 841 [1989]). In any event, it was established that defendants' possession of the south roof has not been exclusive, and the evidence on which defendants rely to support their argument that plaintiff acquiesced in their use and possession of the south roof defeats any claim that their possession was hostile, adverse, or under a claim of right (*see Ray v Beacon Hudson Mtn. Corp.*, 88 NY2d 154, 159 [1996]; *10 E. 70th St. v Gimbel*, 309 AD2d 644, 645 [2003]).

Finally, we note that, to the extent defendants seek to claim a rent reduction based on plaintiff's failure to maintain the south roof as a "required service" under their lease (*see* Rent Stabilization Code [9 NYCRR] § 2520.6 [r] [3]; § 2523.4 [a] [1]; [e] [19]), the proper forum for such a claim in the first instance is the Division of Housing and Community Renewal (*see e.g. Meirowitz v New York State Div. of Hous. & Community Renewal*, 28 AD3d 350 [2006], *lv denied* 7 NY3d 718 [2006]; *Mat-*

ter of *Llorente v New York State Div. of Hous. & Community Renewal*, 16 AD3d 105 [2005]).

We have considered defendants' remaining contentions and find them unavailing. Concur—Catterson, J.P., McGuire, Moskowitz, DeGrasse and Freedman, JJ.